482 A.2d 637

**In the Interest of JAMES JOHN M., a Minor.**

**WALTER GEORGE M.,**

v.

**ANNA MARIE M., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 12, 1982.

Filed Sept. 28, 1984.

418

W. Patrick James, Johnstown, for appellant.

Stephen L. Dugas, Johnstown, for appellee.

Before CERCONE, President Judge and WIEAND and BECK, JJ.

CERCONE, President Judge:

This appeal is taken from the order of the Court of Common Pleas of Cambria County granting custody of James John M., a ten year old boy, to his father; Walter George M., the instant appellee. Appellant, Anna Marie M., the maternal grandmother of James and the person with whom he has resided since the death of his natural mother in December, 1974, argues that the hearing judge below erred in framing the custody issue pending before the court in terms of the absence of convincing reasons why appellee-father should be deprived of his *prima facie* right to custody of his child. In addition, appellant urges that the record contains factors overlooked by the hearing judge which afford the court with convincing reasons why custody of the child should remain with appellant.

James is the sole child resulting from the marriage of appellee and the late Barbara M., appellant's daughter. James was born on September 24, 1971 and resided with his parents until the death of his mother on December 15, 1974;

circumstances indicated that her death may have been caused by strangulation. Immediately subsequent to his mother's death, he lived with his parents' neighbors, but since that time James has resided continuously with appellant.

On February 3, 1975, appellant filed a petition with the Court of Common Pleas of Cambria County for award and confirmation of custody, to which appellee responded with a *habeas corpus* petition. The petitions were consolidated by the lower court which, after conducting a hearing, entered an order, dated March 22, 1976, continuing the custody of James in appellant subject to the visitation rights conferred upon appellee.

Subsequently, on August 31, 1976, appellee married his present wife, Deborah N., who had custody of two young children from a previous marriage. From this union was born a child, Michael.

Following his marriage to Deborah N., appellee, on December 17, 1977, filed a petition for a rehearing with the lower court. The court conducted two hearings and ruled, on June 2, 1978, that convincing reasons remained to justify the belief that James' best interests would be served by denying appellee's petition and by continuing custody in appellant, maternal grandmother. Appellee appealed from that decision to the Superior Court. We remanded the case with instructions that the court below render a more detailed opinion. Pursuant to our directive, the court conducted yet another hearing on August 8, 1979, ruling upon the conclusion of that proceeding that custody of James should continue to reside in his grandmother.

Finally, the matter was placed once again in the hands of the Court of Common Pleas of Cambria County when both appellant and appellee filed petitions for rehearing. Having conducted the requested hearing, the lower court, by order and opinion dated August 27, 1981, ruled that James' best interests could be adequately accommodated in the households of either appellant or appellee, but that, insofar as appellant failed to advance convincing reasons why appellee

should be deprived of his *prima facie* right to the custody of his child, James M. should reside with appellee. The instant appeal then followed.

Our scope of review in custody cases was recently examined in *In Re Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984) where an *en banc* panel of our Court held that a broad scope of review is to be applied. Therein, we suggested four stages for examining custody matters namely: 1.) the procedural stage, where the appellate court determines whether the trial court has made a complete record and filed a comprehensive opinion; 2.) the fact-finding stage, where the appellate court examines the trial court's findings of fact to determine if they are supported by the record; 3.) the conclusion of law stage, where the appellate court determines whether the trial court has committed an error of law; and 4.) the inferences and deductions stage, where the appellate court reviews those inferences and deductions drawn from the facts as found by the trial court, but is not bound by them as it is bound by the trial court's factual findings. *In Re Donna W., supra*, 325 Pa.Superior Ct. at pp. 51–56, 472 A.2d at pp. 641–643. Having applied a broad scope of review instantly, and having considered the case in light of these four stages, we find no error of any kind and affirm the order entered below. Following is a detailed explication of appellant's arguments and our resolution of them.

Appellant's allegation that the hearing judge below improperly framed the issue[1] for resolution in the present custody dispute is without merit. It is true, as appellant notes, that our Supreme Court's opinion in *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980), rejected a formulation of the issue in terms of the

---

**1.** Appellant phrases her argument as follows:

(1) The hearing judge erred in framing the issue in terms of the absence of any convincing reasons why the father should be deprived of his *prima facie* right to custody of his child.

This issue should have been framed in terms of whether convincing reasons appear that the best interests of the child will be served by awarding custody to someone else, in this case, the maternal grandmother.

absence of any evidence that a parent has forfeited his or her *prima facie* right to custody of a child.[2] Our review of the thorough opinion of the hearing judge in the instant case persuades us that appellant has misread the reasons cited by the lower court as support for its decision.

In resolving this custody dispute between a parent and a third party, the hearing judge applied the proper standard of proof as set forth by our court in *In Re Custody of Hernandez*, 249 Pa.Super.Ct. 274, 376 A.2d 648 (1977), and adopted by our Supreme Court in *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980). That is, the parents' right to custody will be forfeited only if convincing reasons "appear that the child's best interest will be served by an award to the third party." In such instances, the evidentiary scale favors the parent. What the hearing judge must do is to hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to tip the scale down on the third party's side. *In Re Custody of Hernandez*, 249 Pa.Super.Ct. at 286, 376 A.2d at 648, *see also Ellerbe v. Hooks*, 490 Pa. at 367, 416 A.2d at 513–14. Instantly, the hearing judge found that appellant failed to advance any convincing reasons why appellee should be deprived of his *prima facie* right to custody of young James. In no way can the lower court's formulation of the test be justly viewed as emphasizing the respective rights of the opposing parties to the detriment of the childs best interests, nor tending to preclude a custody award to appel-

**2.** The *Albright* Court stated that

"[s]uch a formulation tends to focus the inquiry on the respective rights of the contesting parties whereas the real issue is the best interest of the children involved. Restated, the standard in this area *is not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction.* We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit." *Commonwealth v. Albright*, 491 Pa. at 328, 421 A.2d at 161. (Emphasis added).

lant-grandmother in the absence of evidence tending to prove appellee-father's dereliction. *See* n. 2, *supra.* The court's analysis focuses at all times on the best interests of the child and on third party appellant's failure to sustain her burden of demonstrating with "convincing reasons" that those interests would be furthered by an award of custody of James to her. Because the lower court's inquiry comports in every respect with the holdings of prior cases regarding the standard of proof to be carried by third parties who seek to divest parents of the custody of their children, we reject appellant's argument to the contrary.

Appellant also argues that the hearing judge overlooked certain factors which provide convincing reasons why custody of James should continue to be vested in her. Specifically, appellant compares the facts of the instant case to those which confronted our Supreme Court in *Albright v. Commonwealth ex rel. Fetters, supra,* wherein the Court ruled that the "chaotic conditions" to which the children in that case had been exposed throughout their lives as a result of the marital difficulties suffered by their parents, together with the fact that the grandparent's home constituted the sole stable factor in their lives, justified an award of custody of the children to the grandparents. On this point, appellant identifies the following factors: 1) the suspicious nature of her daughter's death and the allegation that appellee was in some way responsible and 2) the fact that appellee's second wife has been diagnosed as suffering from cancer. These factors, argues appellant, offer convincing evidence as to the chaotic conditions to which James will be subject should his father be awarded custody. Moreover, appellant states that because she has provided James with a stable home environment since his mother's death in 1974, it would not serve the child's best interests to remove him now from her care and custody.

Initially, we note that little persuasive force in this case attaches to the fact that James, however happily, has resided with appellant during the preceding seven and one-half years. Although there is no doubt that stability plays

a key role in the development and welfare of a child, and that in determining who should be given custody of a child it is necessary to consider how long the child lived with the third party, it is equally certain that such an investigation is grossly incomplete unless account is taken of all evidence, in particular, the reasons why the child has stayed so long with the third party. *In re Hernandez,. supra,* 249 Pa.Super.Ct. at 297, 376 A.2d at 660. The fact that a child has not lived with a parent for a considerable time will not alone defeat a parent's right to custody. *Id.* The reason for this rule is obvious: "[t]o hold otherwise would be to enable the third party to defeat the child's parent by force—by keeping possession of the child, and by prolonging that possession by litigation." *Id.* The record in the case at bar discloses that with the exception of the short period of time immediately following the death of Barbara M., during which time appellee voluntarily relinquished his custody of James, appellee has been consistent and purposeful in his attempts to regain custody of his son.

The procedural history of this case substantiates that appellant's custody of young James since 1974 results not from appellee's neglect of his son, but rather from the custody litigation which began almost immediately after the death of Barbara M.

As for appellant's suspicion that appellee is somehow responsible for her daughter's death, the lower court concluded that there was nothing in the record to support this allegation and that appellee has never been implicated in connection with this suspicion.

Equally speculative is appellant's assertion that the cancer diagnosis of the condition of appellee's second wife, Deborah, creates the potential for a disruptive home life. Although Deborah testified at one of the hearings that she was diagnosed as suffering from a malignant tumor and that, as a consequence, had undergone a radical hysterectomy on February 1, 1980, she also stated that, there has been no indication since the surgery that the disease is presently active or likely to reactivate. Moreover, she

stated that it was no longer necessary for her to receive medication or radiation in connection with the surgery, and, that although she does take medication for a kidney infection, she is in no way incapacitated. We do not find the factors enumerated by appellant to be "chaotic conditions" in the *Albright* sense which would deprive appellee of custody.

We believe that there is ample support in the record for the ruling of the lower court. As the hearing judge noted in his opinion, appellee and his wife, Deborah, together with their three children, reside in a three-bedroom duplex house which is large enough to accommodate at least one additional child. At the hearing conducted by the lower court on January 30, 1978, appellee stated that he and his wife are members of the United Brethren Church and that they attend services virtually every Sunday. Appellee testified that although he and his wife are members of the Protestant faith, they would nevertheless permit young James to continue with his Catholic school training which was initiated by appellant, until the boy is mature enough to make his own decisions concerning religious affiliation and practices. Appellee further stated that he and his family have included James in weekend family outings such as fishing, camping and boating trips, and that the boy felt comfortable in the presence of the family members. Appellee testified that although he often gives gifts to his son, he does not actually render financial support for the child's upbringing because appellant-grandmother refuses to accept any money from him.

Although appellee stated during the January 30, 1978 hearing that he was then unemployed and receiving public assistance, the testimony elicited at subsequent hearings disclosed that his financial status has steadily improved. As of May 27, 1981, the date of the last hearing, appellee was employed at the municipal garage in Johnstown, had recently been promoted to assistant chief mechanic, was earning over $12,000 annually, and was no longer receiving

public assistance.[3]  The record also reveals that appellee is covered by a Blue Cross health insurance plan.  Appellee testified that such coverage would extend to his son, James, as well, should he be granted custody of the child.

The testimony of appellee's wife at the various hearings corroborated the testimony of her husband.  She stated that she did no work other than that which she performed as a housewife.  She testified that although she and her husband do not provide financial support for James, they nevertheless do furnish him with some clothing.  She noted that her husband treats all the children well and that he treats James as an equal with the other children.  This testimony of appellee's wife was notably forthright and convincing, particularly as to her perception of and apparent concern for the particular needs of James.

Appellant testified at the January 30, 1978 hearing that her home is a three-bedroom house and is occupied by herself, her son, Tom, Tom's son, Tommy, a minor granddaughter, Lisa, and James, who has his own bedroom.  She stated that she had James baptized as a Catholic, attends church services with him on a regular basis, and has enrolled him in a Catholic grade school.  Her income consists of monthly Social Security payments which total approximately $800, rent paid to her by her son, Tom, in the amount of $200 per month, and rental income generated by investment property in the sum of $260 per month.

The testimony elicited from several expert witnesses during the various hearings affords us no basis to reverse the decision of the lower court.  Dr. Lawrence Timens, a psychiatrist employed by the Somerset State Hospital and the City-County Clinic in Johnstown, examined appellant and James on two occasions and appellee and his wife a single time.  Although prior to his examination of appellee and his

3.  It is worthy of note that nearly three years earlier, at a hearing conducted on August 8, 1979, Robert Novotny, a caseworker supervisor at the Cambria County Children and Youth Center, testified that despite the fact that appellee was then unemployed and receiving income of only $676 per month, he was, nonetheless, financially able at that time to provide for James.

wife he recommended that the child be permitted to continue residing with appellant, he concluded subsequent to his visit with the appellee and his wife that they were capable of proper parenting. Robert Novotny, in addition to finding that the appellee had the financial wherewithall to support a fourth child, also reported appellee's home as clean, well-kept and suitable for James. Dr. James N. Shinder, Clinical Director and psychologist for the Cambria County City-County Clinic in Johnstown, testified that based upon his two interviews with James M. and his review of the case background, he believed that the child lacks a true maternal figure and the spontaneity of a happy child.

■ Although for her part, appellant has established that her income and home are more than adequate to provide for James' needs, and that James himself has thrived under her care and custody, we nevertheless believe that she has fallen short of satisfying her admittedly heavy burden of advancing convincing reasons why James' best interests require that he remain in her custody. We agree with the lower court that on the basis of the facts in the instant case, there was no convincing evidence that James' physical, intellectual, moral and spiritual needs would not be fully served by a grant of custody to either appellant or appellee.[4] As a result, we now rule, as did our Supreme Court in *Ellerbe v. Hooks, supra,* that:

> where circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe

4. We are not troubled by the fact that custody of James had been awarded to appellant by the lower court on three occasions prior to its rendering of the instantly-challenged opinion and order. The original petition for confirmation of custody, filed by appellant in February, 1975, was granted by the lower court on the basis of the respective circumstances of the parties then existing. However, subsequent rehearings granted pursuant to petitions filed both by appellant and appellee were conducted by a second judge for the purpose of appraising the changes in appellee's circumstances. We believe that the record affords abundant evidence that since the lower court's initial determination that James should remain in the custody of his grandmother, there has been a steady rise in the social and financial stability of the father's new family so as to justify the conclusion that, at the present time, the father is an equally good candidate for a custody award as is the grandmother.

428

the less intrusive and hence the proper course is to award custody to the parent or parents.

... [o]ur determination today is only an appropriate recognition that the blood relationship of parenthood has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children, and that without some showing of harm, the courts should not interfere with that arrangement.

490 Pa. at 369, 416 A.2d at 514–515.

Order affirmed.

WIEAND, J., concurs in the result.