495 A.2d 205

**Dale E. JONES and Darlee A. Jones**

**v.**

**Katherine L. STONE and James E. Stone.**

**Appeal of Katherine L. STONE.**

Superior Court of Pennsylvania.

Argued April 30, 1985.

Filed June 21, 1985.

Lacy Hayes, Jr., Harrisburg, for appellant.

Marvin Beshore, Harrisburg, for appellees.

Before TAMILIA, MONTGOMERY and ROBERTS, JJ.

TAMILIA, Judge:

This is an appeal from the Order of July 12, 1984 awarding custody of the minor child to Dale E. Jones and Darlee A. Jones, the foster parents/appellees, and partial custody to Katherine L. Stone, the natural mother/appellant.[1] We affirm.

On October 7, 1980, at the tender age of eleven weeks, James Edward Stone, Jr. (hereinafter "Jamie"), who is now

---

1. James E. Stone, Sr., the minor child's father was killed in an automobile accident on December 5, 1984.

four years old, was placed with the appellees by the York County Child Welfare Agency. The agency discovered that Jamie had been apparently abused by his father and therefore placed him with the appellees, who had more than sixteen years experience as foster parents.[2]

On February 13, 1981, the child was returned to his mother, who subsequently asked the appellees to care for him on weekends, which they agreed to do. However, the weekends turned into three or four day periods and the mother eventually asked the appellees to give her child a home for the time being because of problems she was having with her parents and her employment schedule. At no time did the mother provide support for the child until an order for support of $10 per week was entered by the court. The appellees have provided for all of Jamie's needs since he has been with them except they are receiving some public assistance aid to help defray the medical costs and speech therapy that the child needs. In order to enable the appellees to obtain public assistance, the mother signed the applicable forms which acknowledged the control vested in the appellees and the care they were giving her child.

While the lower court could not causally link the child's emotional and physical development to the head injuries inflicted on him as an infant, it did note that he has severe behavioral and speech problems. The Opinion of the lower court, in discussing Jamie's condition, sets forth that:

> It was the Jones' [sic] who recognized these problems and undertook to do something about them. (N.T. 1–111, 112; 118–120); 2–25, 26, 27). Since September of 1983 he has been in a program for speech therapy at the Polyclinic Hospital Speech and Hearing Center (N.T. 1–59) and it has been the Jones' [sic] who have seen that the program is pursued. (N.T. 1–62, 63, 74). The mother has never contacted any of Jamie's doctors or those involved with

2. The appellees are in their forties and have five other children ranging from a son in his early twenties to an eight year old daughter. Mr. Jones has been regularly employed as a heavy equipment mechanic by the same firm for twenty years and Mrs. Jones is a licensed practical nurse.

his speech and behavioral therapy. (N.T. 1–64; N.T. 2–25, 26, 27). It is the opinion of John M. Hume, M.D., a psychiatrist, (N.T. 1–36 to 56) that Jamie has developmental problems of a hostile and aggressive behavior, together with speech difficulties, reflecting the insecurity of being moved back and forth between the mother and the Jones' [sic] and its attendant anxieties. He further concludes that the child has become psychologically bonded to the Jones' [sic] and that a disruption of this relationship would be very harmful to the child.

(Slip Op. at 3–4).

Since January of 1982, the mother has taken Jamie only on weekends and has rarely called on weekdays to inquire about him. As a result, Jamie is now reluctant to leave the appellees' company to go with his mother. When the appellees informed the mother about Jamie's increasing behavioral problem, she agreed to make more frequent visits, but did so for only a short time. Moreover, except for a half day at Christmas, the mother has asked for Jamie on only one other holiday. The record also reflects that when Jamie did visit his mother, her personal care of him was marginal at best. Finally, prior to the custody proceeding at issue here, the mother had never indicated any plans to have Jamie reside with her permanently and, in fact, repeatedly agreed that it was in her child's best interests to remain with the appellees.

On February 22, 1984, the appellees initiated an action for custody of the child and obtained an *ex parte* Order which maintained the custodial status quo with respect to the custody of the child during the pendency of this action.

On April 18 and May 21, 1984, hearings were held before the Honorable Warren G. Morgan of the Court of Common Pleas of Dauphin County. At the conclusion of the appellees' case on May 21, 1984, the appellant moved for Judge Morgan to dismiss their complaint. Appellant alleged that the appellees presented no evidence tending to show that the natural mother was unfit. This motion was denied and on July 12, 1984, Judge Morgan issued an order awarding

custody of the child to appellees.[3] The instant appeal followed.

The issue before us is whether the lower court erred in finding that it would be in the best interests of Jamie to reside in the household of the appellees/foster parents.

■ At the outset, we note that our paramount concern in custody cases is the best interest and permanent welfare of the child. *See, e.g., In re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). Furthermore, this Court's scope of review in custody cases has recently been clarified by the Pennsylvania Supreme Court in *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 237, 478 A.2d 800, 806 (1984), which held:

> an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings* [,] . . . and, thus, represent a gross abuse of discretion . . .

(citations and footnote omitted; emphasis in original).

Having applied this scope of review to the instant case, we are satisfied that: 1) the hearing judge's Opinion was comprehensive and fully supported by the record; and 2) that the hearing judge's decision served the best interests of the child and should not be reversed.

■ Appellant has mistakenly framed the issue as turning on the natural mother's fitness, when that is only one of the factors to be considered. In *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980), our Supreme Court rejected a formulation of the issue in terms of the absence of any evidence that a parent has forfeited his or her *prima facie* right to custody of a child. The *Albright* Court stated that:

3. The July 12, 1984 Order gave the appellees custody of the minor child and stated that "the natural mother, Katherine L. Stone, shall have such rights of temporary custody as the parties shall agree upon and, if the parties cannot agree, this Court will fix such rights upon application."

Such a formulation tends to focus the inquiry on the respective rights of the contesting parties whereas the real issue is the best interest of the children involved. Restated, the standard in this area is not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit.

*Id.*, 491 Pa. at 328, 421 A.2d at 161. *See In re James John M.*, 333 Pa.Super. 417, 482 A.2d 637 (1984).[4]

■ In resolving custody disputes between a parent and a third party, the proper standard of proof is that set forth by this Court in *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), and adopted by our Supreme Court in *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980).

That is, the parents' right to custody will be forfeited only if convincing reasons "appear that the child's best interest will be served by an award to the third party." In such instances, the evidentiary scale favors the parent. What the hearing judge must do is to hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to tip the scale down on the third party's side.

4. Appellant's reliance on *In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984) is misplaced as that case dealt with a petition for the termination of parental rights filed by foster parents who sought to adopt the child. Obviously, "the determination of custody, which is governed solely by the best interests of the child, is an entirely separate issue from that of whether to terminate parental rights." *In re Adoption of Michael J.C.*, 506 Pa. 517, 526, 486 A.2d 371, 376 (1984) (Flaherty, J., dissenting). Here, we are only concerned with a custody dispute and, in any event, the appellees have never interfered with the appellant's relationship with her child. In fact, the record discloses that the appellees encouraged the appellant to spend more time with Jamie.

*In re James John W., supra* 333 Pa.Super. at 422, 482 A.2d at 640 (citing *Ellerbe* and *Hernandez* ).

In the instant case, we are satisfied that the appellees have met their heavy burden of production and persuasion. Such a result is mandated by the following findings of the lower court:

This is not an adoption case and the record amply demonstrates that the Jones' [sic] never intended to take this mother's child away from her. They have a fine family of their own. They are just very good, compassionate people who love children and were also eager to help a young mother who was having problems caring for her child. It is plain that at all times they have tried to foster and develop the mother's relationship with Jamie, trying to get her to spend more time with him and to concern herself about his welfare. Otherwise strangers to the mother, the Jones' [sic] who first offered themselves as babysitters found themselves thrust by an irresponsible mother into the role of parents, caring for and nurturing this child.

We had an extended opportunity to observe this mother and it is our perception that the ground of such little interest as she has shown in Jamie is not parental devotion but rather a self-image requiring that she not admit that she has virtually abandoned the child. This is seen in her remarks to Mrs. Jones that "she needed" the week-ends (N.T. 1–113); that although Jamie was happiest in the Jones' [sic] home "... that's not what makes her the happiest." (N.T. 1–129). Her explanation for her conduct to the effect that she was too destitute to establish a different relationship with Jamie just isn't persuasive.

(Slip Op. at 4–5).

Upon review of the entire record, we are satisfied that the lower court's resolution was sufficient and should not be disturbed. The hearing judge, as fact finder, was in the best position to evaluate the sincerity and credibility of the witnesses, and we conclude that his findings were

supported by competent evidence. *See In re Custody of Pearce*, 310 Pa.Super. 254, 456 A.2d 597 (1983). It is clear from the thorough Opinion of Judge Morgan that he carefully considered the matter, and that his decision was based on his judgment that the appellees were more capable of establishing a stable relationship with the child than the natural mother was. In *Albright v. Commonwealth ex rel. Fetters, supra,* Justice Nix, currently Chief Justice of our Supreme Court, noted the importance of the stability factor in a custody dispute:

> In *Ellerbe*, we held that the removal of a child from a secure and familiar environment was the type of factor that could justify the award of the child to a grandparent over the claim of a parent. *Ellerbe v. Hooks, supra.* The adverse effect upon the development of youngsters caused by the disruption of an established stable relationship has been well recognized in this area of the law. *Gunter v. Gunter,* 240 Pa.Super. 382, 399, 361 A.2d 307 (1976).

*Id.* 491 Pa. at 326, 421 A.2d at 160.[5] *See also Gerber v. Gerber,* 337 Pa.Super. 580, 487 A.2d 413 (1985). Here, the importance of stability is even more pressing because of Jamie's present speech and behavioral problems. We find that the bonds of affection between Jamie and the appellees "have become so strong that to sunder them suddenly may result not only in the child's unhappiness but also in its physical injury...." *In re Tremayne Quame Idress R.,* 286 Pa.Super. 480, 493, 494, 429 A.2d 40, 47–48 (1981) (citations omitted). *See also Pamela J.K. v. Roger D.J.,* 277 Pa.Super. 579, 589, 419 A.2d 1301, 1307 (1980).[6]

**5.** Jamie also displayed a clear preference to remain with the appellees and became upset whenever he had to go with his mother. While the weight to be accorded such preference varies according to age, intelligence and maturity of the child (i.e., Jamie is four years old), *Commonwealth ex rel. Bankert v. Children's Services,* 224 Pa.Super. 556, 307 A.2d 411 (1973), it is one factor to be considered.

**6.** The testimony of John H. Hume, M.D., a psychiatrist, emphasized the strong bonding between the appellees and the child, and cautioned that a sudden breaking of these bonds would exacerbate the child's existing physical, emotional and social problems.

Finally, we conclude that there is no need to remand this matter for the gathering of more evidence or for further exposition of the reasons for the lower court's decision. The lower court held two days of hearings and the appellees presented the testimony of family members, their pastor and a psychiatrist. The appellant, on the other hand, chose not to make a request to the court to appoint a psychiatric expert on her behalf, and offered only her testimony and that of her mother in an attempt to counter the allegations that she was unfit. Appellant had an ample opportunity to present further testimony but chose not to do so. Her allegations that the record is incomplete are meritless; thus a remand "would only be an unwarranted imposition and expense upon all parties." *Commonwealth ex rel. Robinson v. Robinson, supra* 505 Pa. at 237, 478 A.2d at 806.

Accordingly, the Order of July 12, 1984 awarding custody of the minor child to the appellees is affirmed. This Order is, of course, subject to the right of either party to seek a modification of it and to present evidence to the trial court of a substantial change in circumstances since the date of the last evidentiary hearing. *Gonzalez v. Gonzalez,* 337 Pa.Super. 1, 486 A.2d 449 (1984).

Jurisdiction is relinquished.