538 A.2d 1348

**Joseph Eugene SNARSKI, Jr., Appellant,**

v.

**Edward KRINCEK and Delores Krincek, His Wife, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1987.

Filed March 15, 1988.

Gifford R. Cappellini, Wilkes–Barre, for appellant.

Mark A. Peleak, Assistant Public Defender, Kingston, for appellees.

Before CAVANAUGH, BECK and HESTER, JJ.

BECK, Judge:

This appeal arises out of a custody modification action commenced by appellees, Edward and Delores Krincek, on April 18, 1986 in the Court of Common Pleas for Luzerne County. The Krinceks are the maternal grandparents of the child in question, Joseph Edward Snarski ("Joseph"). Appellant is Joseph Eugene Snarski, Jr., Joseph's father ("the father").

Joseph was born on May 17, 1979. Shortly before Joseph's birth, his father and mother separated and his mother went to live with her parents, appellees here ("the grandparents"). Shortly after Joseph's birth, his parents were divorced. Joseph and his mother lived with the grandparents until August 5, 1983 when Joseph's mother tragically died. The father then sought custody of Joseph which was granted by order dated August 2, 1984. The grandparents were granted partial custody rights as to Joseph. At the time of the entry of the August 2, 1984 order granting custody to the father, the father was remarried, had another son by his second wife and was in military service stationed in Florida. In December 1984, the father was

transferred to England and took up residence there with his wife and both children. Approximately one year later, in February 1986, the father and his second wife separated and the wife left England to return to Florida, her parents' home. She took both children with her, with the father's consent. Shortly thereafter, the wife contacted the grandparents and told them that if they could obtain an order giving them custody of Joseph, they could have him. Accordingly, on April 18, 1986, the grandparents filed a petition for the immediate physical custody of Joseph and for modification of the prior custody order. On that day the trial court entered an ex parte order giving them temporary physical custody and requiring that notice of the order be given to the father.

On June 12, 1986 the father filed a Motion for Special Relief requesting that he retain legal custody of Joseph and alleging that he had attempted to secure leave from the armed forces immediately upon hearing about the fact that Joseph was now with the grandparents. In response to this Motion, the trial court entered an order granting the father specific periods of partial custody of Joseph. The father was discharged from the military and returned to Pennsylvania in August 1986.

After numerous other interim orders regarding continuances, hearing dates and grants of periods of partial custody were entered, on January 26 and 28, 1987 a full custody hearing was held. On April 1, 1987, the trial court interviewed Joseph, and on May 8, 1987 the court entered an order awarding custody of Joseph to the grandparents, subject to partial custody rights granted to the father. This appeal is from the May 8, 1987 order.

The trial court has developed an extensive record in this matter and has provided us with a comprehensive opinion in support of its May 8, 1987 order. In doing so, the trial court has fully comported with our longstanding requirement of a full record and complete trial court opinion in custody matters so as to enable us to conduct the searching review we are charged with making in such cases. *English*

*v. English,* 322 Pa.Super. 234, 469 A.2d 270 (1983); *Daniel K.D. v. Jan M.H.,* 301 Pa.Super. 36, 446 A.2d 1323 (1982). We provide the following lengthy synopsis of the trial court's opinion because we not only agree with the conclusions reached, but also because we regard the court's analysis of the facts and law to be complete, convincing and correct.

■ First, the court recognized that its standard for decision of the issue before it differed greatly from the usual custody case involving an initial determination of custody between two parents. This is a case involving modification of an existing custody order and is a dispute between one parent and grandparents. The effect of these distinctions on the applicable legal standard, in the view of the trial court, was to greatly increase the burden on the grandparents to show why they should now have custody of Joseph. Citing *In Interest of James John M.,* 333 Pa.Super. 417, 482 A.2d 637 (1984), the trial court recognized that the father's right to custody of his child could only be forfeited if there were convincing reasons why the child's best interests would be served by an award to the grandparents.

■ The court also took cognizance of the fact that in an action seeking modification of a existing custody order, the court must be reluctant to grant the modification in the interest of preserving stability in the child's life. The order should be modified only if the party seeking modification demonstrates that the circumstances affecting the child's welfare have substantially changed since the entry of the original order. Trial Court Opinion at 31, citing *Commonwealth ex rel. Zaubi v. Zaubi,* 275 Pa.Super. 294, 418 A.2d 729, *aff'd,* 492 Pa. 183, 423 A.2d 333 (1980).

Thus, the court saw its task as follows. First, it had to determine whether there were changed circumstances warranting the reconsideration of the existing custody order. The burden of showing such was on the grandparents. Second, assuming that changed circumstances were demonstrated, the court then had to determine which of the competing parties should have custody in order best to

serve Joseph's interests. As to the latter determination, the court noted that in a case involving two parents, each shared an equal burden on this issue. However, in the instant case, the court saw the grandparents as having the increased burden of "overcoming the prima facie right of a father to custody." Trial Court Opinion at p. 32.

Carefully applying these standards to the case before it, the trial court first analyzed whether there were relevant changed circumstances. The court noted that its initial award of custody of Joseph to the father on August 2, 1984 was largely based on the court's decision that the father was at that time "able to provide a complete home environment for the child." Trial Court Opinion at p. 25. The father was then married to his second wife with whom Joseph had established a good relationship. The father also had his second son, Michael, with whom Joseph had established a good sibling relationship. The court also noted that it had at that time recognized and sought to preserve the existing valuable relationship between Joseph and the grandparents by granting them partial custody in the August 2, 1984 order.

In contrast, since the August 2, 1984 order, the following changes affecting Joseph's best interests had occurred:

1. The father had moved Joseph to England and Joseph had then been returned first to Florida and then to Pennsylvania.

2. The father obstructed the grandparents' access to Joseph when he was in Florida and England.

3. The father had abdicated his parenting responsibilities as to Joseph to his second wife when the family resided in England.

4. The father permitted Joseph to be taken by the second wife from England to Florida when the father and the second wife first separated.

5. The father and his second wife had divorced.

6. Joseph is no longer in contact with either the second wife or his half-brother Michael.

7. The father had only minimal contact with Michael.
8. The father is no longer in military service and is now unemployed.
9. The father has no home of his own and lives with his parents.

Thus, the trial court concluded that the stable loving environment to which it had committed Joseph by the original custody order no longer existed and that this constituted a change of circumstances sufficient to warrant modification of the order.

Second, the trial court found that the grandparents had succeeded in showing convincing reasons why the father's "prima facie" right to custody should be overcome and in showing that Joseph's best interests would be served by granting custody to the grandparents. First, the court noted that Joseph had lived all but one and a half of his eight years with the grandparents who have been a continuous source of stability for the child. Further, the court was convinced that since the initial award of custody to the father, he had demonstrated his inability to provide an environment for Joseph which would serve the child's best interests. The court pointed to the father's "deliberate policy" to interfere with Joseph's relationship with his grandparents, which the court had found beneficial to Joseph, and the father's tendency to act immaturely, compulsively, and without regard for convention. Next, the court credited the testimony of the father's ex-second wife that during their marriage, the father had not involved himself in either of the children's upbringing. In fact, the court noted that the father had abandoned Michael, his second son, after divorcing the second wife and saw this as further indication of the father's unwillingness or inability to parent his children. Given this behavior, the trial court did not believe the father would be a responsible parent in future. In contrast, the court saw the grandparents as having consistently provided a loving and stable environment for Joseph and as being mature, responsible and financially

secure people. Thus, the court awarded custody to the grandparents and partial custody to the father.

Although our review of the trial court's serious and thorough deliberations is broad, it is not without limitation. We can explain our standard of review no more clearly than did our Supreme Court in the recent case of *Lombardo v. Lombardo*, 515 Pa. 139, 527 A.2d 525 (1987), as follows:

> A broad or searching standard of review in custody matters is entirely proper. Mr. Justice Nix, now Chief Justice, writing for a plurality of the Court, stated in *Commonwealth ex rel. Spriggs v. Carson, supra* [470 Pa. 290, 368 A.2d 635 (1977)]:
>
>> It is now beyond dispute that the sole issue to be decided in a custody proceeding between contending parents is the best interest of the child ... In order to insure such a focus, our law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type. Thus, an appellate court is not bound by deductions and inferences made by a trial court from the facts found, ... nor must a reviewing court accept a finding which has no competent evidence to support it.
>>
>> (citations omitted)
>
> 470 Pa. at 294–95, 368 A.2d at 637.
>
> A broad scope of review, however, does not vest in the reviewing court either the duty or the privilege of making its own independent determination.
>
>> [T]his broader power of review was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear.
>
> *Carson, supra*, 470 Pa. at 295, 368 A.2d at 637, citing *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 177, 97 A.2d 350, 353 (1953).

. . . .

This Court very clearly set forth the proper standard of appellate review in *Commonwealth ex rel. Robinson v. Robinson, supra* [505 Pa. 226, 478 A.2d 800 (1984)]; therein we stated that appellate review in custody cases should be confined to the issues presented in accordance with the above cited principles enunciated in *Carson.*

... Thus, an appellate court is empowered to determine whether the trial court's incontrovertable factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings, Bohachevsky v. Sembrot,* 368 Pa. 228, 81 A.2d 554 (1951); and thus, represent a gross abuse of discretion. *Carson. See also, Andrikanics v. Andrekanics,* [sic] 371 Pa. 222, 89 A.2d 792 (1952). (Emphasis in original).

*Robinson,* 505 Pa. at 237, 478 A.2d at 806.

*Id.,* 515 Pa. at 147–48, 527 A.2d at 529.

Thus, our task today is to ascertain if the trial court here committed a gross abuse of discretion. *See also Barclay v. Barclay,* 367 Pa.Super. 529, 530, 533 A.2d 143, 144 (1987) (scope of review in custody matters is gross abuse of discretion). Upon a painstaking review of the record, we find no such abuse of discretion. To the contrary, we find ample support for the trial court's factual findings and regard the factual conclusions that the trial court drew from those findings as being eminently reasonable. Moreover, we find that the trial court decided this case in accordance with the legal principles applicable to such a custody dispute and, thus, committed no clear error of law. Accordingly, we will affirm the decision of the trial court.

I. *Modification of Original Custody Order.*

 Appellant first argues that there has been no substantial change of circumstances warranting modification of the original custody order which gave custody to the father. We, on the other hand, conclude that there has beyond any

doubt been a significant change in the circumstances relevant to Joseph's best interests and that a reconsideration of the original custody order was mandated. We recognize that modification of an existing custody order should not be undertaken lightly, largely due to our ever present concern for preserving stability in the life of the subject child. *Hartman v. Hartman*, 328 Pa.Super. 154, 476 A.2d 938 (1984); *Daniel K.D. v. Jan. M.H.*, 301 Pa.Super. 36, 446 A.2d 1323 (1982). The burden of proving a change in circumstance is on the party seeking modification of the custody order. *Burr v. Morgart*, 339 Pa.Super. 341, 488 A.2d 1155 (1985). However, where there is a substantial change in the situation affecting the child, a court must consent to reconsider the custody situation in light of that change to ensure the continued overall welfare of the child. *Id.*

Beyond the uniform reiteration of the foregoing general standard of decision, there is little consistency in our decisions regarding modification of custody orders. This is in large part due to the particularly fact sensitive nature of such cases. The court is faced with reviewing the broad scenario of the competing parties' lives and assessing the impact on the child of various occurrences in those lives since the original custody order.

▉ Nevertheless, we have surveyed the applicable cases and have drawn several conclusions to guide our review of the instant case. First, as we have stated, we are always and ultimately concerned with the welfare of the child and we take as a given that stability in the child's life contributes to that welfare. However, we are also mindful that stability is not to be preserved when there are other reasons why the environment in which the child is living under the present custody order is no longer the one that will overall serve the child's best interests. *Parker v. MacDonald*, 344 Pa.Super. 552, 496 A.2d 1244 (1984).

▉ Because the child's welfare is paramount, we evaluate the alleged changes in circumstance with an eye to whether they have impacted on the child. *Burr v. Morgart*,

*supra; Hartman v. Hartman, supra; Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976); *Commonwealth ex rel. Grimes v. Grimes,* 281 Pa.Super. 484, 422 A.2d 572 (1980). Changes that do not have such an impact are irrelevant.

In evaluating the changes in circumstance allegedly warranting reconsideration, we also must keep in mind that there is almost no single factor that alone compels reconsideration. As the father in the instant case correctly indicates, neither the remarriage of one or both parents nor certain changes in residence, for example, will alone necessarily justify reconsideration. *Burr v. Morgart, supra; Hartman v. Hartman, supra; Daniel K.D. v. Jan M.H., supra.* Appellant is equally correct in asserting that the only circumstances relevant to reconsideration are those that have occurred since the entry of the original custody order. To consider those facts existing prior to or at the time of the prior order merely leads to relitigation of issues already determined. *Burr v. Morgart, supra; Barclay v. Barclay, supra.*

On the other hand, facts like changes in marital status or residence are not irrelevant to our inquiry. We have found a substantial change of circumstance in at least one case involving the remarriage of both parents after the initial custody order. *Espersen v. Davidow,* 359 Pa.Super. 531, 519 A.2d 479 (1986). In *Espersen,* both parties had remarried after the initial custody order. We considered the fact that the child had a strained relationship with the new wife of the father, who was the custodial parent under the existing custody order. We also considered that the child apparently had a good relationship with her mother and her new husband, who demonstrated that they could provide a good home to the child.

We have also identified other factors as being of central importance in finding a substantial change of circumstance. For example, we have emphasized that when a custodial parent obstructs contact between the child and the non-custodial party which was required by the existing custody

order, the best interests of the child may no longer be served by that order and a reconsideration may be warranted. *Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980).

Thus, in determining whether changed circumstances exist, the court's focus must be on the child and not the custodians. This is because the law recognizes that exposing a child to the possibility of a new custodial arrangement may threaten the child's stability and well-being. Therefore, the law requires that a predicate to challenging a custodial arrangement must be a showing of changed circumstances. For example, in determining whether there are changed circumstances, a court should not look only at the fact of remarriage of one or both parents but the court should inquire whether the fact of remarriage has resulted in changed circumstances for the child.

In the instant case, we find that all of the changes in circumstance considered by the trial court and listed above are both significant and have impacted on Joseph. They are variously relevant to the place where and the home situation in which Joseph lives, his relationships with the members of his former step-family, the treatment of Joseph by his father and the displayed attitude of his father toward the grandparents. There is no doubt whatsoever that the tumultuous situation in this child's life since the original custody order of August 2, 1984, and the now perceived results of that tumult are "changed circumstances" warranting a review of the prior custody arrangement.

Appellant father concedes that at least two of the enumerated changes in circumstance did occur since the original custody order. Appellant concedes the deterioration of appellant's second marriage and various "moves necessitated by ... [the father's] career changes." Brief for Appellant at 12. However, appellant argues that these do not warrant reconsideration of the custody order, and states what appears to be the major theme of appellant's argument throughout this appeal, as follows: "... a parent's unsettled past should not be emphasized at the expense of

and without sufficient consideration for current stability."
*Id.,* citing *Hartman, supra.*

Although we will address this recurrent theme at greater
length below, we note at this juncture that it has no
relevance to whether there were substantial changed cir-
cumstances here. The instability of appellant's life, evi-
denced by his separation and then divorce from his second
wife, his termination of his military career and several
changes of residence, arose after the entry of the original
order. This instability in turn produced instability for Jo-
seph, which has temporarily abated only because since April
1986 he has been in the grandparents' temporary custody.
Moreover, as of the time of the custody modification hear-
ing, this instability in appellant's life had not been replaced
by any noteworthy stability.

Thus, there is no analogy between the *Hartman* case, on
which appellant relies, and this case. Although in *Hart-
man* the court did choose to de-emphasize the unsettled
nature of the custodial parent's life since the original custo-
dy order in deciding whether there were changed circum-
stances, it did so because it found that at the time of the
modification hearing and for over a full year before that
hearing, the custodial parent's life had been quite stable
and that the child in question was doing well. *Id.* 328
Pa.Super. at 160–61, 476 A.2d at 941. The *Hartman* court
specifically stated that the unsettled past of the custodial
parent's life should not be emphasized only where that
instability has not had an ongoing negative effect on the
child. *Id.* (citing *In re Leskovich,* 253 Pa.Super. 349, 385
A.2d 373 (1978)). *Accord Michael T.L. v. Marilyn J.L.,* 525
Pa.Super. 42, 525 A.2d 414, 418 (1987).

In the present case, we are not confronted with nearly so
simplistic a situation as that of a custodial parent who has
merely remarried and moved once or twice since the original
custody order, but who has then settled into a stable
relationship, residence and job.

Here, we have not just a change of residence since the
first custody order, but rather several relocations, some

interstate and some intercontinental, some made with the father and some made without him. We have not just a remarriage, but a deterioration of the very marriage that had provided the stable home environment which convinced the trial court to enter the original custody order in the first place. We have also the abandonment of Joseph by the father to the second wife, both in England and in letting her take Joseph back to Florida without the father. We have the father's radically changed employment situation, which has gone from a ten-year military career to no job and no job prospects. In such a situation, it would have been a gross abuse of discretion for the trial court not to have reconsidered the existing custody order.

Before we conclude our discussion of this issue, we note that appellant raises two other specific concerns regarding the trial court's analysis of the changed circumstances issue. For purposes of completeness, we will address both of these concerns briefly. Appellant asserts that the trial court erred by basing its finding of changed circumstances on facts existing prior to the initial custody order and by "penalizing" the father for being in the military service overseas. Neither argument has merit.

First, appellant is simply wrong in saying that the trial court considered facts prior to the first custody order in finding changed circumstances. In so stating, appellant has cited us to three pages of the trial court's opinion. Notably, only one of these pages is actually in the section of that opinion that addresses changed circumstances. The other references are to the areas of the opinion where the trial court was either setting forth the general factual background of the case or discussing the father's past conduct in connection with evaluating whether Joseph's best interests would be served by granting custody to the father. The only actual reference to the court's discussion of changed circumstances is to the area of the opinion where the court recites the history of Joseph's custody from his birth to the present and notes that for six and one-half of Joseph's eight years, he has lived with his grandparents.

This fact is undoubtedly relevant to a changed circumstance analysis. As we have stated, modifying custody orders raises a concern for preserving stability in the child's life. By referring to Joseph's history of living with his grandparents even prior to the original custody order, the trial court was merely stating that in deciding whether to reconsider the original order, we need have no concern here for preserving any stability in Joseph's life. In fact, that order has provided Joseph with no stability at all. He is not even presently residing with his father pursuant to that order. Reconsidering that order at this time will in no way decrease the stability of Joseph's life and, in fact, can do nothing but increase that stability by enabling us to find which of the competing parties has actually provided an overall stabilizing effect in Joseph's life and to award them custody.

 Appellant's contention that in considering whether there were changed circumstances the trial court penalized the father for being in the military is equally devoid of merit. Once again, none of the areas of the trial court opinion cited by appellant where the trial court referred to the father's military service are in the portion of the opinion on changed circumstances. In fact, in considering whether there were changed circumstances, the trial court noted that since the original order the father had left the military and was now unemployed. Thus, the court clearly would have been *less* inclined to find a change in circumstance if the father was still in the military and earning an income as he had been when the original order was entered.[1]

1. In the body of appellant's brief to this Court, appellant appears to argue that since under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. § 501, appellant was allegedly entitled to a stay of these proceedings at the outset to enable him to return from military service overseas, the trial court should not have considered against appellant his several month delay in opposing the grandparents' attempt to get custody, nor should it have considered the fact that Joseph was now living with the grandparents since they obtained temporary custody of Joseph during the father's absence from the country because of his military service. Our responses to this fallacious argument are several. First, to the extent that appellant has any argument based on the Soldier's and Sailor's Relief Act, he has clearly

## II. *Best Interest Analysis.*

Having concluded that the trial court was correct in finding that reconsideration of the original custody order was appropriate, we must now proceed to the issue of what custody arrangement will now serve Joseph's best interest. In this case, the best interest analysis is governed by our decision in *In Re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), as adopted by our Supreme Court in *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980). *Hernandez* set forth the standard by which we must determine who, between a parent and a non-parent third party, should be granted custody, as follows:

> When the judge is hearing a dispute between the parents, or a parent, and a third party, the manner of inquiry is more complex. The question still is, What is in the child's best interest? However, the parties do not start out even; the parents have a "prima facie" right to custody," which will be forfeited only if "convincing reasons" appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

*In Re Custody of Hernandez*, 249 Pa.Super. at 286, 376 A.2d at 654; *see also Burke v. Pope*, 366 Pa.Super. 488, 531 A.2d 782 (1987); *Chapman v. Goodman*, 366 Pa.Super. 130, 530 A.2d 926 (1987); *Jones v. Stone*, 343 Pa.Super. 416, 495 A.2d 205 (1985).

waived it. The argument was not raised in the trial court until the day of the custody hearing, seven months into this custody dispute, and it is not included in the Statement of Questions Presented section of appellant's brief to this Court. Pa.R.App.P. 2119(f). In any event, the trial court did not consider appellant's military service against him and the reason the grandparents succeeded in getting temporary custody of Joseph in April 1986 was not the father's military service but rather his own act in permitting his second wife to bring Joseph to this country, and her act of offering Joseph to the grandparents.

Very shortly after the Supreme Court adopted the foregoing standard in *Ellerbe,* it issued a clarification of the standard in *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980), where the Court affirmed an award of custody to maternal grandparents as opposed to the subject children's father. This clarification has not received sufficient attention in our case law and, therefore, merits reiteration:

Most recently, this Court has had occasion to adopt the standard set forth by the Superior Court in *In Re Hernandez, supra; Ellerbe v. Hooks, supra.* In holding that parents have a "prima facie right to custody," we explained that standard as providing for:

"... simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy." *Ellerbe v. Hooks,* [490 Pa.] p. [368], 416 A.2d p. 514.

However, we made it clear that there was no intention in adopting this formulation to suggest that parenthood alone would necessarily defeat the claim of custody of a non-parent.

. . . .

... a reference to an implicit misperception in Superior Court's reasoning [in this case] is required. That court framed the issue in terms of the absence of any evidence "that the father has forfeited his prima facie right to custody of his sons, ..." ... Such a formulation tends to focus the inquiry on the respective rights of the contesting parties whereas the real issue is the best interest of the children involved. Restated, the standard in this area is not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However,

other factors which have significant impact on the well being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit.

*Id.,* 491 Pa. at 325–28, 421 A.2d at 159–61.

The lessons to be taken from these passages are several. First, although parenthood is a highly important factor, it should not be accorded determinative weight in our decision. Other factors, like the value of stability, are also to be accorded great weight. Indeed, in *Ellerbe* itself the Supreme Court affirmed the trial court's grant of custody to grandparents over a parent of the subject child for the very reason that the child had developed a stable relationship with the grandparents and had a stable environment with them. The same basic situation was presented in *Albright,* and once again the grandparents were given custody. Second, the *Hernandez* standard is first and foremost an allocation of the burden of proof to the third parties, but it does not impose on them the burden of showing that the parent is unfit. Thus, the issue centers on the child, and not on the parent.

In the case before us, despite the allocation of the burden of showing convincing reasons to the grandparents, the hearing court nevertheless awarded custody to the grandparents. We must thoroughly review the court's assessment of the evidence to determine whether this conclusion was a gross abuse of discretion when measured against the legal principles enunciated above.

Appellant contends that the hearing court committed several missteps in assessing the evidence. Appellant summarizes these alleged errors as follows:

The Court overemphasized the stability of the Krincek [the grandparents'] home and the length of time Joseph had lived there. Furthermore, the Court abused its discretion by relying upon testimony from a witness who had previously committed perjury, by improperly consid-

ering the custody of Mr. Snarski's other child, and by placing weight on Joseph's preference.

Brief for Appellant at p. 14.

■ We reject appellant's critique of the hearing court's decision on two grounds. First, appellant has misconstrued the role of this Court in asking that we question the hearing court's assessment of the credibility of the witnesses. Second, appellant has asked us to disapprove the hearing court's consideration of factors, like the preference of the child, which have long been recognized as relevant to a custody determination. *Burr v. Morgart, supra.* However, we also reject appellant's arguments because our independent review of this record has convinced us that there are more than convincing reasons why the grandparents are presently the most suitable custodians for Joseph.

Appellant's first argument focusses on the hearing court's consideration of the stability of the grandparents and of Joseph's relationship with them. Appellant contends that "... stability and length of relationship are not necessarily convincing reasons to defeat a parent's right to custody." Brief for Appellant at p. 14. In support of this assertion, appellant cites those passages in *In Re Custody of Hernandez, supra,* and *In Interest of James John M., supra,* where this court stated that although stability is important, we must also determine why a child has been allowed to develop a long-term and stable relationship with one of the competing parties. *In Re Custody of Hernandez,* 249 Pa.Super. at 296–98, 376 A.2d at 660; *In Interest of James John M.,* 333 Pa.Super. at 424, 482 A.2d at 641.

In making those statements, however, we wished only to avoid awards of custody to the party with whom the child was presently living merely because that party had possession of the child for some time prior to the hearing. As we said in *Hernandez,* "[t]o hold otherwise would be to enable the third party to defeat the child's parent by force—by keeping possession of the child and by prolonging that possession by litigation." 249 Pa.Super. at 297, 376 A.2d at 660.

Appellant's reliance on these cases and the concerns we expressed in them is misplaced. Here, the hearing court's reliance on the stability of the grandparents and of their relationship with Joseph was proper. What helped to convince the court that custody should go to the grandparents was not merely the fact that Joseph had resided with the grandparents most of his life and for some months prior to the hearing. The court was persuaded by the stability of the grandparents themselves and by the fact that they had been the only long-term stabilizing influence in Joseph's life. In other words, the court found the grandparents to be stable people, who were financially secure, owned their own home and business, and had a long-term, good marriage. More importantly, the court found the grandparents to have been the people who were always there for Joseph, always loving, always concerned. In contrast, the court noted that in the one and one-half years that Joseph had been in his father's custody, he had been exposed to chaotic conditions. He had lived through a short-term move to England, his father's troubled and sometimes violent second marriage, and a return to Florida without his father.

In this regard, we find a close parallel between this case and the situation presented to the Supreme Court in *Albright*. There, the Court found convincing reasons for an award of custody to maternal grandparents in part because, as the Court stated, "... the children had been exposed to chaotic conditions throughout their lives as a result of the marital difficulties between the parents and ... the home of the grandparents had proven to be the single stabilizing factor in their lives." 491 Pa. at 327, 421 A.2d at 160.

Appellant also appears to suggest that the grandparents should not be "given credit" for the time Joseph has lived with them since his return to Pennsylvania in April 1986 because the grandparents would never have had Joseph with them during that time if not for the father's forced absence from the country due to his military service. This is plainly wrong. In our view, the true reason why the grandparents have had Joseph since April 1986 is because

the father allowed his then second wife, from whom he was already separated, to bring Joseph back to this country and she offered Joseph to the grandparents. They proceeded to obtain temporary custody of Joseph in a perfectly appropriate manner, by obtaining a temporary custody order from the trial court. If delays in litigation then allowed Joseph to remain with the grandparents for some months, in which time he rekindled his already close relationship with them, we will certainly not punish Joseph as a result of that circumstance. As we have previously opined, where a stable relationship has developed between a child and one of the parties competing for custody because delays in the custody litigation, not primarily the fault of either party, have prolonged the child's stay with that party, we will still credit the attachments the child has formed while in that party's home. *Custody of Phillips*, 260 Pa.Super. 402, 394 A.2d 989 (1978).

Appellant next contends that the hearing court erred in considering evidence of his dereliction of his parental responsibilities in the past. Appellant alleges error on two bases. He states the "recurrent theme" to which we have previously referred, i.e., that we should not focus on a parent's unsettled past but rather on his present situation and parenting abilities. He also attacks the court's acceptance of the testimony of appellant's former second wife to the effect that appellant did not involve himself in either of his children's lives when the family resided in England.

 Taking the last contention first, we need only reiterate what has been said so many times before. Assessment of the credibility of testimony is for the hearing court and our broad scope of review in custody cases does not alter this principle. *Lombardo v. Lombardo, supra.* We will not second guess the judge who saw and heard the witness say that which we can only read. Further, we too credit the testimony of the second wife. We recognize that she admitted to having lied on behalf of the father at the prior custody hearing in 1984 when she was still married to the father, allegedly because she feared the consequences

from the father if she did not. We also accept, however, as did the trial court, that her reason for lying no longer existed at the time of the second hearing. We also point out that to the extent that the wife did perjure herself at the first hearing, she certainly did not do so completely on her own. The wife's perjury was at the instance of the father and thus there is equal doubt cast on his credibility in denying the wife's testimony concerning his ability and willingness to parent.

We also refuse to accept and apply appellant's theme which seeks to bury the past in favor of an examination of the present. We do not question the long-standing principle that the proper focus of inquiry in a custody case is on the present and the future.

> The primary concern in custody matters lies not with the past but with the present and future. Facts *as of time of hearing* are the foundation for determination of the court. Past conduct is not relevant unless it will produce an ongoing negative effect on the child's welfare.

*Commonwealth ex rel. Gorto v. Gorto*, 298 Pa.Super. 509, 514, 444 A.2d 1299, 1301 (1982) (emphasis in original) (citations omitted).

It would be patently ridiculous to say, however, that a court must blind itself to all that a parent has done prior to the custody hearing. We do not live our lives in distinct and unconnected periods of time, with the past importing nothing for the present, nor the present for the future. What we have been and done makes us what we are, and what we are gives some indication of what we will be. Thus, where a parent's past reveals character traits that undermine the ability or willingness of that parent to provide for his child, and in the absence of evidence that those traits have somehow changed so as to produce new parenting abilities and concern, we can rightfully conclude that the risk that the past will be repeated in the future justifies an award of custody to a third party who has never indicated an inability or unwillingness to care for the child. The hearing court's consideration of appellant's past con-

duct in this case was perfectly appropriate for the very reason that the court in fact looked to the past in order to assess the present and the future. Moreover, the court also fully considered all other available information concerning the father's present situation and character and his intentions as to the future. The court found predominantly negative evidence from the past and little if any convincing evidence of a present change of character or amelioration of the father's circumstances.

The hearing court reviewed the testimony of the expert witnesses called by both parties and found them in surprising agreement as to most of the pertinent issues. Both agreed that the father did not adequately control his emotions, which led to impulsive and sometimes imprudent behavior. They also agreed that the father had ignored Joseph and had not been as good a father as either expert would have wished. Although the father's expert testified that the father had changed and presently had the ability and willingness to care for Joseph, the court disagreed.

The court found, and we agree, that the father's present situation did not argue in favor of an award of custody to him. He is presently unemployed and has no home of his own. The court also took cognizance of the father's present neglect of his other son, Michael, the product of the father's second marriage. Appellant argues that this consideration of the father's present conduct is inappropriate. Although we do not accord great weight to this factor, we do not think it was a gross abuse of discretion for the trial court to have taken notice of it. Since appellant's major argument is that we should ignore the past because he is a changed man, it was not at all unreasonable for the hearing court to search for empiric evidence of this change. One area the court looked to was appellant's displayed attitude toward Michael. The court found only unrebutted evidence of neglect continuing to the

present time. It was not error for the court to consider this evidence.[2]

■ Lastly, we consider appellant's objection to the hearing court's consideration of Joseph's expressed preference to stay with his grandparents. The court gave some weight to Joseph's preference, but expressly refused to consider it a controlling factor. Trial Court Opinion at 46. Appellant argues that Joseph's preference was entitled to no weight in this case because it was based solely on irrelevant factors like Joseph's desire to stay with his grandparents to receive the toys they often gave him.

We have recently restated the manner in which a child's preference is to be evaluated in a custody matter:

> The weight to be given a child's preference is to be determined by the trial judge who sees and hears the child. *Commonwealth ex rel. Grimes v. Grimes,* ... [281 Pa.Super. 484, 494, 422 A.2d 572, 577 (1980).] Accord: *In re Davies,* 288 Pa.Super. 453, 466, 432 A.2d 600, 606–07 (1981). This depends to a great extent upon the age, maturity and intelligence of the child. *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 327 n. 4, 421 A.2d 157, 160 n. 4 (1980). The determination must be made on a case by case basis. Although a child's preference should be carefully considered, it is not controlling. *Commonwealth ex rel. Bankert v. Children's Services,* 224 Pa.Super. 556, 307 A.2d 411, 415 (1973).

*Burr v. Morgart,* 339 Pa.Super. at 346, 488 A.2d at 1158. *See also Mahoney v. Mahoney,* 354 Pa.Super. 585, 512 A.2d 694, 697 (1986); *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981).

2. We also note that we find appellant's objection to the hearing court's consideration of the situation with Michael somewhat disingenuous. It was counsel for appellant who first raised this issue at the hearing. Counsel attempted to demonstrate that appellant had been determined to be a fit parent for Michael by the Florida court presiding over the divorce and custody action between appellant and his second wife. (R. 118–19a). Given this, we find it only natural for counsel for appellees to wish to probe further into appellant's actual attitude toward and involvement with Michael and for the court to consider the evidence that was then elicited.

Although Joseph did not precisely articulate the reasons underlying his desire to stay with his grandparents, we, and presumably the hearing court, have been able to glean some of Joseph's reasons from a review of the colloquy between him and the hearing judge. Joseph did not solely base his preference on the grandparents' generosity as to giving toys or taking him to places like the circus, as appellant argues. Joseph repeatedly stated that he loved his grandparents and liked to live with them. He also displayed hostility toward his father and expressed dislike for him. Joseph also referred to various unpleasant incidents that had occurred during his time with his father in England, including when the father had, according to Joseph, "beat" his second wife. Overall, we construe Joseph's preference to be based on a feeling of love and security and happy times with his grandparents as compared to a feeling of distance and very unhappy times with his father. The facts bear out Joseph's perceptions. The trial court committed no error in according this preference some, but not controlling, weight.

The order of the trial court is affirmed.

CAVANAUGH, J., concurs in the result.