530 A.2d 926

**Alice Margaret CHAPMAN**

v.

**Raymond GOODMAN, Ruth Goodman and Jennie Benton, Appellants.**

Superior Court of Pennsylvania.

Argued May 21, 1987.
Filed Sept. 3, 1987.

Bridget A. Nawrocki, Bensalem, for appellants.

Randal W. Hugo, Newton, for appellee.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

PER CURIAM:

Appellants have undertaken this appeal from an order which (1) vacated a temporary custody order, and (2) awarded custody of John Charles Chapman, born March 7, 1985, to his natural father. We are constrained to reverse and remand.

The natural parents of the child, Bethann Louise Goodman and Charles J. Chapman, were involved in a serious automobile accident on October 20, 1985, when the child was seven months of age. Bethann Goodman, the mother, died as a result of her injuries, and Charles Chapman, the father, was seriously injured. The parties do not dispute that Bethann Louise Goodman and Charles J. Chapman were never married, but disagree as to the period of time in which they resided together.

It appears that shortly after the accident, a petition for appointment of a guardian for the minor child was filed in Blair County by appellant Raymond Goodman, the father of the deceased natural mother, and a complaint for custody was filed in Blair County by appellant Jennie Benton, the first cousin of the natural mother. Appellee, Alice Chapman, mother of the natural father, filed a petition in Bucks County for temporary custody of the minor child. Jurisdiction of all custody proceedings relating to John Chapman was, subsequently, by agreement of the parties, vested in the Court of Common Pleas of Bucks County and, by stipulation, appellant Jennie Benton was joined in the action for temporary custody instituted by appellee Alice Chapman.[1]

A consent decree was entered, pursuant to an agreement of the parties, on December 12, 1985. The decree provided (1) that appellee, Alice Chapman, was to have temporary

1. It appears that the actions commenced in Blair County were not transferred to Bucks County but, rather, were continued due to the pendency of the Bucks County custody action.

custody each week from 8:00 p.m. Sunday through 7:00 p.m. Friday, and (2) that appellants, Raymond Goodman and Jennie Benton, were to have temporary custody from 7:00 p.m. Friday through 8:00 p.m. Sunday. The decree further provided that transportation from Blair County to Bucks County (a five hour trip by automobile each way) would be the responsibility of appellants. The court also directed that home evaluations be undertaken and specified that the decree was entered without prejudice to the parties' separate claims for custody of the child.

When, nine months thereafter, specifically on September 8, 1986, appellee, Alice Chapman, filed a petition to terminate the outstanding consent decree, the matter was scheduled for conference before the Permanent Custody Hearing Officer of Bucks County.

Appellants contend that, prior to the meeting, the Master agreed that appellants need not personally appear for the conference. No agreement was reached at the conference and the matter was scheduled for a hearing before the court on December 1, 1986. The record indicates that the hearing scheduled for December 1, 1986, was continued at the request of counsel for appellee, and that upon her motion of December 3, 1986, the court scheduled a hearing for Thursday, December 9, 1986. The record also contains a letter dated December 5, 1986, from counsel for appellants stating that since notice of the December 9, 1986 hearing had just been received by her that day, a continuance was necessary in order to enable her clients to arrange to travel to Bucks County. When the hearing commenced as scheduled on December 9, 1986, counsel for appellee informed the court that the child's natural father was "on a cot in the waiting room right now ready to be wheeled in for the purpose of answering any questions that the court may wish to ask of him. . . ." The record does not indicate whether appellee Alice Chapman was present in the courtroom at that time or waiting with her son in another room, but does indicate that counsel for appellants was present, though none of the appellants personally appeared.

The hearing court, without the presentation of any evidence, vacated the temporary custody order on the grounds that the recovery of the natural father precluded an award of custody to any other party. The court then "awarded" custody of the minor child to the natural father, who had not been made a party to the proceedings, without prejudice to the right of appellant, Raymond Goodman, to institute an action pursuant to the Custody and Grandparents Visitation Act, Act of November 5, 1981, P.L. 322, No. 115, 23 P.S. § 1001 *et seq.* This appeal timely followed the entry of that order.

Appellants contend that the court erred as a matter of law in (1) concluding that the only "party with rights in a custody proceeding was the natural father", and (2) awarding custody to the natural father without the presentation of any evidence.

The cardinal concern in all custody proceedings is the best interest and permanent welfare of the child. *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 323, 421 A.2d 157, 158 (1980). The scope of appellate review in custody cases is broad and proceeds through four stages:

1.) the procedural stage, where the appellate court determines whether the trial court has made a complete record and filed a comprehensive opinion; 2.) the factfinding stage, where the appellate court examines the trial court's findings of fact to determine if they are supported by the record; 3.) the conclusion of law stage, where the appellate court determines whether the trial court has committed an error of law; and 4.) the inferences and deductions stage, where the appellate court reviews those inferences and deductions drawn from the facts as found by the trial court, but is not bound by them as it is bound by the trial court's factual findings.

*In Interest of James John M.*, 333 Pa.Super. 417, 421, 482 A.2d 637, 639 (1984). *See also: In Re Donna W.*, 325 Pa.Super. 39, 51–55, 472 A.2d 635, 641–643 (1984).

The hearing court, by reason of its conclusion that the natural father was entitled to custody of the child, did not require the presentation of any evidence concerning the best interest of the child.[2]  There is, therefore, no evidence of record available for this Court to review.

Although the sole issue in any custody proceeding, whether between two parents or between a natural parent and a third party, is the best interest of the child, in a proceeding involving a parent and a third person, "the evidentiary scale is tipped, and tipped hard, to the parents' side." *In Re Custody of Hernandez*, 249 Pa.Super. 274, 286, 376 A.2d 648, 654 (1977).  A parent's right to custody will be forfeited *only* if convincing reasons appear that the child's best interest will be served by an award to the third party. *Ellerbe v. Hooks*, 490 Pa. 363, 365, 416 A.2d 512, 513 (1980). Thus,

> [w]hat the hearing court must do is hear all the evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to tip the scale down on the third party's side.

*In Interest of James John M., supra* 333 Pa.Super. at 422, 482 A.2d at 640.  *Accord: Ellerbe v. Hooks, supra* 490 Pa. at 367, 416 A.2d at 514; *Fallaro v. Yeager*, 364 Pa.Super. 408, 414–415, 528 A.2d 222, 225 (1987); *Jones v. Stone*, 343 Pa.Super. 416, 420, 495 A.2d 205, 208 (1985); *Commonwealth ex rel. Miller v. Miller*, 329 Pa.Super. 248, 253, 478 A.2d 451, 454 (1984); *Commonwealth ex rel. Gorto v. Gorto*, 298 Pa.Super. 509, 511, 444 A.2d 1299, 1300 (1982).

Due to the absence of any record evidence concerning the best interest of the child, we are constrained to vacate the order entered on December 9, 1986, and remand for proceedings consistent with the foregoing.  Jurisdiction is relinquished.

**2.** Nor does the record contain the home evaluations ordered by the court.