543 A.2d 566

**Marie Theresa BURKE, Appellee,**

v.

**Mary Modesto POPE, Appellant.**

Superior Court of Pennsylvania.

Argued May 10, 1988.

Filed June 3, 1988.

Petition for Allowance of Appeal
Denied Aug. 31, 1988.

468

Harry M. Byrne, Jr., Philadelphia, for appellant.

Joyce A. Monaco, Media, for appellee.

Before MONTEMURO, TAMILIA and JOHNSON, JJ.

TAMILIA, Judge:

This appeal brings before us for the second time a child custody dispute between a parent and an unrelated non-parent. Mrs. Mary Modesto Pope appeals a March 17, 1988 Order of the Court of Common Pleas of Delaware County implementing a plan to restore to her custody of her three minor daughters. The trial court's Order was a result of our Court's decision in *Burke v. Pope,* 366 Pa.Super. 488, 531 A.2d 782 (1987), *petition for allowance of appeal filed,*

No. 821 E.D. Allocatur Docket (Oct. 20, 1987), in which we vacated an Order of custody entered in the trial court, which awarded Dr. Marie Theresa Burke sole custody with certain visitation and partial custody rights remaining in Mrs. Pope, and remanded with directions to implement a plan designed to restore custody of the children to Mrs. Pope within six months to one year.[1]

The first part of the rather arduous procedural history of this case was summarized in our earlier Opinion as follows:

This case commenced on March 25, 1985 when Dr. Burke, a former obstetrician-gynecologist, filed a petition seeking custody of Mrs. Pope's three children, Amanda Marie, Rebecca Ann and Abigail Leigh Pope. On April 23, 1985, Mrs. Pope filed a petition for visitation and partial custody and on April 29, 1985, a response to Dr. Burke's original petition and a cross-petition for custody. The parties entered into stipulations, eventually adopted as Orders of court, on May 10, 1985 and July 2, 1985, which temporarily placed physical custody of the children with Dr. Burke and allowed Mrs. Pope visitation four hours a weekend on alternate Saturdays and Sundays. On December 12, 1985, Mrs. Pope filed a petition for special relief, pursuant to Pa.R.C.P. 1915.13, requesting modification of the temporary custody Order and requesting an emergency Order for Christmas visitation. On December 18, 1985, the Honorable Howard F. Reed, Jr., ordered that Mrs. Pope have special visitation time with her children on Christmas day, 1985. On January 15, 1986, Dr. Burke filed a response to the December 12, 1985 petition and a cross-petition for special relief pursuant to

1. At the time of this writing Dr. Burke's petition for allowance of appeal and an application for stay pending appeal with the Supreme Court of Pennsylvania are still pending. Because the Supreme Court has not taken action on Dr. Burke's petition, we are able to address the merits of this appeal. *See* Pa.R.A.P. 1701(b)(2). Pennsylvania Rule of Appellate Procedure 2591(b) provides that an appellate court, upon its own motion or upon application, "may issue any appropriate order requiring obedience to or otherwise enforcing its judgment or other order."

Pa.R.C.P. 1915.13. On January 27, 1986, Mrs. Pope filed an answer.

In all, five hearings were held before the Honorable John V. Diggins, on January 28, February 27, April 21, June 5 and October 1, 1986. On June 12, 1986, Mrs. Pope filed a motion, pursuant to Pa.R.C.P. 1915.13, requesting entry of a partial custody Order. On June 18, 1986, Judge Diggins entered a temporary Order for partial custody, decreeing that Mrs. Pope have partial custody of her children each weekend from 12:00 noon on Saturday until 5:00 p.m. on Sunday. On August 27, 1986, Mrs. Pope filed a petition for contempt of the partial custody Order. Following the October 1, 1986 hearing, Judge Diggins directed Dr. Burke to comply with the previous temporary Order for partial custody. Finally, after the submission of post-trial briefs, on February 10, 1987, Judge Diggins filed an Opinion and Order awarding sole physical custody to Dr. Burke with visitation and partial custody rights to Mrs. Pope.

*Burke* at 490–491, 531 A.2d at 783 (footnotes omitted). Mrs. Pope appealed and on September 21, 1987, we vacated the February 10, 1987 Order and remanded for a new custody Order, consistent with our Opinion, to implement a plan to restore custody to Mrs. Pope. *See Burke, supra.*

On remand, the trial court acted promptly to set a rehearing date of October 8, 1987; however, on October 1, 1987, in response to a petition by Dr. Burke, the trial court continued the rehearing until after the Pennsylvania Supreme Court rendered a decision on Dr. Burke's petition for allowance of appeal. In effect, this stayed the judgment entered by our Court on September 21, 1987. Mrs. Pope appealed the stay Order to the Superior Court on November 12, 1987, which resulted in a per curiam Order by our Court, dated December 24, 1987, directing the trial court "to comply forthwith with this court's judgment and [O]rder of September 21, 1987." Subsequently, on February 3, 1988, the trial court heard argument for the purpose of establishing a schedule to return custody of the children to their mother.

Both parties submitted their own proposals for compliance with the directives contained in this Court's Order of September 21, 1987. Finally, on March 17, 1988, the trial court filed the Order which is the subject of the instant timely appeal by Mrs. Pope.[2]

The question now on appeal is whether the trial court's implementation Order of March 17, 1988 is in substantial compliance with the standards set forth in our Opinion in *Burke, supra.* This calls for a review of the earlier custody Order, the parties' proposed arrangements, and the Order now in question.

Under the February 10, 1987 Order we vacated, Dr. Burke was awarded sole physical custody. Mrs. Pope was given the right to the children every other weekend from 12:00 noon on Saturday until 5:00 p.m. on Sunday, as well as for two weeks in the summer. The holiday schedule began in 1987 with Mrs. Pope having the right to the children on Easter, Memorial Day, Fourth of July, Labor Day and Thanksgiving from 9:30 a.m. to 9:00 p.m. and from 12:00 noon on Christmas day until 9:00 p.m. This holiday schedule would alternate yearly, giving Dr. Burke the children on the enumerated days thereafter, except as to Christmas, when Mrs. Pope, on the alternate year, would have the children from noon on December 24th until noon on December 25th.

Both parties submitted their respective plans to transfer full custody to Mrs. Pope at the rehearing on February 3, 1988 and in proposed Orders to the trial court. Mrs. Pope proposed a comprehensive plan that would increase her custody rights to shared legal and physical custody of the children over a five month period ending with full legal and physical custody of the children in Mrs. Pope when school lets out at the end of June, 1988. Specifically, Mrs. Pope proposed the children would first be in her custody three

2. In an Order dated April 22, 1988, President Judge Vincent A. Cirillo of the Superior Court established an expedited schedule for the filing of briefs, reproduced record, and listing for argument on May 10, 1988. In conformity with the "Fast Track" schedule for custody cases, this matter has received priority in our review after oral argument.

out of four weekends per month from Friday at 6:00 p.m. until school began on Monday morning—Mrs. Pope would take the children to school on Monday morning. Also, Mrs. Pope would have the children two nights a week from 6:00 p.m. to 8:00 p.m. for dinner and reasonable unlimited telephone access—apparently, Mrs. Pope felt Dr. Burke's answering machine greatly hampered her right to telephone the children in the past. Mrs. Pope felt this initial period of custody should last six to eight weeks. After this period, Mrs. Pope proposed that in addition to the previous custody proposal of three out of four weekends and two dinners a week, she would have the children for one full week a month in the next month, two full weeks in the month after that, then three full weeks in the following month, ending in full custody after the fifth month which would coincide with summer vacation from school. During the summer vacation, Mrs. Pope proposed that Dr. Burke would get custody one weekend per month from Friday at 6:00 p.m. to Sunday at 6:00 p.m., with telephone access twice a week. This schedule would last until the end of summer and at that time no Order would exist as to Dr. Burke's visitation rights; if necessary a hearing could be held at that time to determine what's appropriate with respect to Dr. Burke. Lastly, Mrs. Pope requested "full access" to all school events and involvement in decisions concerning the children's education, to start immediately. *See* (N.T. 2/3/88, pp. 4–17). Additionally, Mrs. Pope feels any and all counselling should be conducted by the Delaware County Family Services, with costs shared equally between the parties.

In comparison, Dr. Burke proposed a more indefinite schedule for returning the children to the mother. Dr. Burke recommended full legal custody remain with her until such time as Mrs. Pope shall have regained sole physical custody. Dr. Burke would also restrict the transfer of legal custody to Mrs. Pope on the contingency that the mother demonstrate proof of her ability to adequately maintain and support the children. The method for determining this would be to have Mrs. Pope and the children assessed, evaluated and counseled by Dr. Harold J. Byron, a

psychiatrist of Dr. Burke's choosing, and that all costs of counselling be borne by the mother. Dr. Burke would require all of the evaluating and counselling be done before Mrs. Pope could get any increase in custody rights. After Dr. Byron's initial assessment and assuming a favorable report, Dr. Burke suggested Mrs. Pope obtain partial custody on alternate weekends from Friday at 6:30 p.m. to Sunday at 5:00 p.m., plus Tuesday evenings from 6:30 p.m. to 8:30 p.m. for dinner until the end of the 1987–88 school year and, after that time, add Thursday nights for the same time and purpose. The holiday schedule of the February 10, 1987 Order would continue. At the end of the school year, Mrs. Pope would receive the children for nine days, then the children would attend an overnight camp, of Dr. Burke's choosing, known as Camp Good News in Cape Cod, Massachusetts, for approximately two months. Upon return from camp, Dr. Burke would have the children evaluated again by Dr. Byron and they would be enrolled in the private school they currently attend. Dr. Burke's proposal did not mention any specific date upon which full legal custody would be returned to Mrs. Pope, but it did request that upon return of legal custody Dr. Burke receive partial custody one weekend each month from Friday at 6:30 p.m. to Sunday at 6:30 p.m., four weeks vacation during the summer, one week during Christmas vacation, and unlimited telephone access at all times.

The trial court's March 17, 1988 Order set forth its plan to restore custody to Mrs. Pope as follows:

### ORDER

AND NOW, to wit, this 17th day of March, 1988, the following plan leading to restoring custody to the Respondent is hereby adopted by this Court:

1. Legal custody of the three children as the term is defined in the Shared Custody Act, 23 P.S. 101 et. seq. shall remain with [Dr. Burke] until such time as [Mrs. Pope] has demonstrated to the Court proof of her ability to adequately maintain and support the children.

474

Whenever practical, [Dr. Burke] shall confer with [Mrs. Pope] in making decisions.

2. Mother and children shall be initially analyzed and evaluated by Dr. Harold J. Byron to determine the fitness of these parties to comply with the custodial and visitation provisions of this Order and to continue counselling mother and children regarding the effects of the original separation of the mother and the children and a reconciliation among them. The cost of this service is to be borne 75% by mother and 25% by Dr. Burke, Respondent and Petitioner respectively. All financial arrangements with Dr. Byron to be made directly by [Dr. Burke] and [Mrs. Pope].

3. The parties shall share physical custody of the children as defined in the Shared Custody Act as follows:

a. Immediately the mother shall have custody of the children every other weekend from Friday at 6:30 p.m. to Sunday at 6:30 p.m.

b. Mother shall have custody every Tuesday and Thursday evening[s] from 6:30 p.m. to 8:30 p.m. for the purpose of a family dinner.

c. At the end of the spring school term, the children to vacation with mother for nine consecutive days.

4. Children shall attend overnight camp at Camp Good News in Cape Cod, Massachusetts for the regular two sessions. Cost to be borne by [Dr. Burke].

5. During summer camp as detailed above, either party may visit the children.

6. Immediately upon return from camp, children shall be evaluated by Doctor Byron. Doctor Byron to concentrate on the issues as detailed in paragraph 3 above. Cost to be borne by [Dr. Burke].

7. During the month of May, 1988, [Mrs. Pope] shall have custody of the children for the first weekend of the month to include Mother's Day. Said visitation to be from Friday at 6:30 p.m. to Sunday at 6:30 p.m.

8. Mother shall have the children for a two week vacation after summer camp and before the beginning of the school year.

9. The remaining holidays shall be apportioned equally between the parties.

10. Children shall be enrolled in the County Day School of the Sacred Heart for one year. Cost to be borne by [Dr. Burke].

11. Matter to be reviewed by this Court in September of 1988.

Mrs. Pope argues that the trial court erred in continuing "legal custody" in Dr. Burke for an indefinite period of time because such an arrangement does not affirmatively move forward restoration of full legal and physical custody of the children in herself as directed by our Court in *Burke, supra.* In addition, she contends the trial court's granting of partial custody rights in her was too restrictive and too closely mirrors the previous Order which we found inadequate in *Burke.* Lastly, Mrs. Pope argues the appointment of Dr. Burke's hand-picked psychologist to report on issues already decided or in some cases not previously raised, was an abuse of discretion which is counterproductive to the goal of returning full custody to herself within a year. After a thorough review of the trial court's action, we find the Order of March 17, 1988 to be inadequate, fundamentally flawed in some respects, and contrary to the directives we set forth in our earlier Opinion in this case.

■ We view the trial court's making the shifting of legal custody contingent upon Mrs. Pope's demonstrating "proof of her ability to adequately maintain and support the children" as adding a factual issue which has already been decided in the case and which serves only to maintain and prolong the mother's inability to become a controlling influence in the children's lives. Failing to give the mother immediate meaningful control of the children's lives will only serve to continue the present situation without allowing a natural parent-child relationship to develop. In our earlier Opinion, we called for "[f]ormulation of a plan

leading to custody in the mother and minimizing harm to the children with partial custody of increasing duration accompanied by counselling over a stated period of time...." *Burke* at 502, 531 A.2d at 789. We have already found that the record supports the trial court's earlier determination that the mother is fit and that a reciprocal loving bond exists between the mother and children. *Id.* Having the entire plan to restore custody in the mother contingent on a psychologist's reevaluation of the previously determined fitness of the mother is counterproductive and unnecessary and only serves to maintain the situation established by the February 10, 1987 custody Order we vacated. This is not to say that counselling is unnecessary. Professional assistance will greatly facilitate not only the mother's capacity to parent, but also afford the children a medium for dealing with the growing relationship.

We stated in our earlier Opinion that a definitive plan should be established to "1) affirmatively move toward reunification as a goal, 2) provide psychological counselling to facilitate this progress, 3) gradually increase partial custody and 4) establish a time frame within which this process will be completed and full custody in the mother established," and concluded that six months to one year would be an appropriate time frame under these circumstances. *Id.*, 366 Pa.Superior Ct. at 503, 531 A.2d at 789. The trial court's Order fails to take this course in a number of aspects.

■ First, as already stated, by failing to increase Mrs. Pope's control and authority over the children, a move towards reunification is wholly incomplete. No provision was made for Mrs. Pope to have either access to her children's school nor influence on their education. Considering the previous obstructions Dr. Burke placed on this crucial aspect of the children's lives, by instructing school officials not to deal with the natural mother and not to keep her abreast of their school activities, we find this omission

fatal.[3]   Mrs. Pope should have immediate and complete access to all school events and involvement in decisions concerning the children's education.   In short, in order to move towards reunification, shared legal custody must be established immediately; this will pave the road to full legal custody in the near future.

■   Next, although the trial court's Order does provide for greater physical custody in the mother than previously existed, it is not enough.   The new Order spans a period of five and one-half months, providing for a review by the court in September of 1988.   While it does provide an increase in the mother's custody rights from the previous vacated Order, we find the increase marginal at best considering the span of time the new Order contemplates.   The addition of Friday nights on the alternative weekends and two nights for dinner a week are good short-term increases in custody, but a more final schedule with greater rights over the same span of time would be more appropriate.   We feel an Order granting Mrs. Pope greater physical custody rights in increasing increments more in line with Mrs. Pope's proposal would better serve to bring about full custody in the mother.   This will act to dispel the doubts these extensive legal proceedings may have instilled in the children as to their future.   Therefore, on remand the trial court should firmly establish a plan which brings about full legal and physical custody in the next six months.   We set the period of six months as a time frame due to the fact that eight months have already passed since our earlier decision in which we called for a period of six to twelve months for complete transfer of custody.   Because Mrs. Pope has already been given some increase in custody rights since that decision, completion of the transfer should not take as long.

3.   We note that Amanda Marie was born June 8, 1974, Rebecca Ann was born September 25, 1976 and Abigail Leigh was born April 1, 1979, making their respective ages approximately 11, 9 and 6 at the time of the petition for custody, 13, 11 and 8 at the time of the last appeal, and 13, 11 and 9 at the time of this appeal.

■ Particularly disturbing is the extremely long summer camp called for in the new Order which takes up most of the children's summer. We find it perplexing how Dr. Burke, who is the original petitioner in this case, is willing to pay for private schooling and private out-of-state camp for all three children, but would have the less financially fortunate mother pay for the counselling which is necessary and truly in the best interest of the children. The financial roller coaster the children experience between the parties may be a major detriment to the establishment of a better relationship with the mother. Not only does the summer camp pose an added expense—because the mother must travel to Massachusetts to enforce her visitation rights under the Order—but it seriously curtails the valuable and irreplaceable time the mother and children will have together. The summer vacation poses an opportunity for allowing the children to have extensive time with their mother without outside pressures such as school work. Sending the children to an out-of-state camp which the mother cannot afford, and will be unlikely to afford next summer, can render no long-term benefits to the children. There is even some question that a two-month camp experience is desirable under any circumstances. The children should spend a more typical summer with their mother as soon as possible and a decision to place them in camp is one in which she should participate and the time at camp should be minimized to allow her greater access to the children. Unless Mrs. Pope agrees otherwise, we suggest no more than a two-week camp experience.

■ Lastly, we find the trial court's appointment of Dr. Harold J. Byron and the apportionment of costs with respect to his services to be unsound. The record discloses that in the past, Dr. Burke's privately procured psychologist had never talked to the mother and had reported findings in contravention to the jointly-chosen neutral psychologist. In order to alleviate any possible animosity the mother may understandably have towards being subjected to Dr. Burke's hand-picked experts, the appointment of a com-

pletely neutral psychologist for counselling would be better not only for the mother but also for the children. We realize that reappointing the neutral psychologist may not be practical following the trial court's previous determination towards him; however, since appointment of a neutral counselor is essential, the Delaware County Family Services can be turned to for assistance. Apportionment of costs between the parties should be on an equal basis.

While the trial court provided this Court with an Opinion to aid us in our understanding of his ruling in this matter, we find the explanation provided confirms the thrust of appellant's position that there was de minimis compliance with implementation of our Order. There should be no further difficulty in this respect following this Opinion and remand.

The custody and visitation Order is, therefore, vacated and the case remanded for imposition of an Order consistent with this Opinion.

Jurisdiction relinquished.