574 A.2d 105

**Jonathan C. MOORE, Appellant,**

v.

**Rachel M. MOORE.**

Superior Court of Pennsylvania.

Argued March 7, 1990.

Filed April 30, 1990.

John J. Money, III, Hanover, for appellant.

Karen Semmelman, York, for appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

Appellant/father appeals the trial court's Order of June 2, 1989, awarding primary physical custody to appellee/mother and granting him partial physical custody of their four and one-half year old son Nicholas.

Father had primary physical custody of Nicholas from September, 1988, when Mother moved to Florida to attend college, until the June 2nd Order. While mother was in Florida, she saw Nicholas one weekend a month when she would fly back to Pennsylvania. Prior to that, the parties shared custody with mother having Nicholas Thursdays through Sundays and father having Nicholas Sundays through Thursdays. On February 25, 1988, father filed a petition to affirm custody and on March 21, 1988 mother filed her own petition for custody. Mother subsequently filed an amended petition for custody in which she alleged she was moving to Florida and wanted primary physical custody so she could take Nicholas with her.

A hearing on the petitions was held on February 7, 1989, and on February 10, 1989, the court entered an Order awarding primary physical custody to father with rights of partial custody to mother. Following this Order, mother returned to Pennsylvania, retained new counsel and filed a petition for rehearing and reconsideration, claiming the court failed to make a complete record at the February 7th hearing. After a hearing on the petition, the court vacated the custody Order and reopened the case for further testimony.

A second custody hearing was held in May wherein the testimony of February 7th was incorporated and, for the first time, mother introduced the testimony of Dr. Stanley Schneider, a psychologist, who evaluated the parties, father's girlfriend and mother's fiance, as well as Nicholas. Also at the hearing, mother indicated she was negotiating the purchase of a home in Florida but would withdraw her offer if she was unsuccessful in obtaining primary custody of Nicholas. Based on Dr. Schneider's testimony and his opinion that mother would be more willing to promote and encourage contact between Nicholas and the noncustodial parent and the maternal grandparents, the court entered a new Order on June 2, 1989, awarding primary physical custody to mother with father receiving partial physical custody. Mother plans to start Nicholas in school in Florida in September of 1990 when she returns to school to complete her graphic design degree.

Father now raises three issues on appeal, the first being whether the court erred in vacating the February 10, 1989 Order and allowing a rehearing. We agree this was error; therefore, for the reasons that follow we vacate the June 2, 1989 Order and reinstate the February 10th Order.

■ Mother filed her petition for rehearing and reconsideration on February 28, 1989, and on March 3, 1989, the court ordered argument on the matter, to be held March 10, 1989. Following submission of briefs by both parties, the court heard argument and on March 13, 1989 vacated its February 10, 1989 Order and granted mother's petition for rehearing and reconsideration. The trial court was without authority to vacate the February 10th Order, however, as a custody Order is a final, appealable Order, reviewable by this Court without any intervening procedures. *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988). Under Pa.R.C.P.1915.10(b) motions for post-trial relief may not be filed to an Order of custody and a party cannot circumvent the appellate process by filing a petition for rehearing and reconsideration. Consequently, the Order entered June 2,

1989 must be vacated and the Order of February 10, 1989 reinstated.

Notwithstanding the result stated above, we will address the other issues presented in this appeal to offer a decision on the merits to the parties and to provide future guidance to trial courts faced with similar situations.

Appellant/father also argues the court did not give proper weight to mother's decision to move out of state with their son, and the court erroneously relied on Dr. Schneider's testimony which was a prediction of future conduct. Mother raises an additional issue, claiming the court did not abuse its discretion in relying on 23 Pa.C.S. § 5303, which states as follows:

### § 5303. Award of sole custody

In making an order for custody to either parent individually, the court shall consider, among other factors, which parent is more likely to encourage, permit and allow frequent and continuing contact and physical access between the noncustodial parent and the child. The court shall award sole custody when it is in the best interest of the child.

There is no question that Dr. Schneider's testimony influenced the court and was the determining factor in removing Nicholas from his father's care and awarding primary custody to mother, despite mother's decision to move Nicholas to Florida with her. The court based its February 10th Order on the evidence which showed both parents to be fit, loving parents and there was no reason to take primary custody away from father.

In our February 10th Order we found that the relationship between Nicholas and his father and the stability that his father has provided for Nicholas were controlling factors in our award of custody to the father.

At that time we saw absolutely no reason to disturb the status quo by awarding majority physical custody to the mother. We believe then as we do now that both parents have demonstrated a willingness to act as majority physical custodian, both parents can provide adequate living

arrangements for their son, and both parents can provide financially for Nicholas, that both parents provide for Nicholas' religious training, and are generally concerned for his intellectual, emotional, and physical development. (Slip OP., Dorney, J., 6/2/89, pp. 4-5.)

The court went on to say, however:

Unfortunately, we did not have any expert testimony except out of Constance Marshall who conducted the Moore's home study at the first hearing on February 7th.

We have that now and in the form of testimony from Dr. Stanley Schneider, a psychologist who evaluated the mother, the father, the mother's fiance, and the father's girlfriend, and observed the interaction of Nicholas with these adults.

Dr. Schneider found Nicholas to be the type of child as described by the other witnesses; strong willed, but well adjusted, adaptable, relating easily to other people, and a neat kid.

Dr. Schneider found the father to be inflexible and indicated that although he will apply [sic] with the Court Order, it is doubtful that he will be flexible in allowing additional contacts between Nicholas and his mother and the extended family.

On the other hand, Dr. Schneider found the mother to be more likely to encourage and permit a continuing and expanded relationship between Nicholas and his father and her extended family.

There is no question that Nicholas and his maternal grandparents share a close relationship. Dr. Schneider believes that this relationship is important to Nicholas and should continue, and we agree that a healthy relationship between a child and that child's grandparents is important to the child.

Based on his evaluations and observations, Dr. Schneider had concluded that the mother is best able to assure and promote a continuing relationship between Nicholas and the other parent.

(Slip Op. at pp. 5–7.) Thus the court based its decision on Dr. Schneider's opinion that mother would most likely encourage a relationship between Nicholas and his father and grandparents, without finding any evidence that father was not a fit parent or was neglecting his duty as primary caretaker.

■ Our scope of review in custody matters is broad; however, we may not reverse a trial court's decision absent an abuse of discretion. *Dolan v. Dolan*, 378 Pa.Super. 321, 548 A.2d 632 (1988). We will interfere with a custody decision only where the trial court's judgment is "manifestly unreasonable as shown by the evidence of record." *In re David L.C.*, 376 Pa.Super. 615, 618, 546 A.2d 694, 695 (1988). We find the trial court abused its discretion in awarding primary physical custody to mother when father has been the primary caretaker for quite some time and no evidence whatsoever was introduced proving father was unfit to continue as primary caretaker. The mother is pursuing new career goals and undoubtedly life style and social changes, all of which, for some time to come, will produce some instability in the child's environment. Comparing this with his father's situation, which is stable and predictive of a continuing proper development for the child, an expert's opinion that the father would not be as flexible as the mother can carry little weight when measuring the child's best interest. The expert made a value judgment that flexibility is better than firmness, which in today's world of uncertainty and destabilization of child rearing is very questionable. It is an unacceptable basis, standing alone, for a change of custody. The court's original finding that the child (adopting the expert's analysis) is *"strong willed* but well adjusted, adaptable, relating easily to other people, and a neat kid," is a description that indicates firmness is both needed and working. To change this situation, when no evidence is presented for a need to change in the best interest of the child, is to proceed by whim rather than fact and to favor the mother over the father without justification. *See Commonwealth ex rel.*

*Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977). Nor may appellee prevail in seeking a rehearing under these circumstances under the best interest standard, despite the repudiation of the doctrine that a rehearing may not take place without showing a substantial change of circumstance. *Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988); *also see Jaindl v. Myers,* 520 Pa. 147, 553 A.2d 407 (1989), Per Curiam; Dissenting Opinion by Nix, C.J.; *Martin v. Martin,* 386 Pa.Super. 328, 562 A.2d 1389 (1989). Here, the father was not shown to be unfit and it was not established even by the weakest standard, preponderance of the evidence, that it would be in the child's best interest to change custody, uproot the child from a wholesome, established environment and to place him into a wholly new environment, unknown and uninvestigated.

Our paramount concern in custody cases must be the child's best interest. *Mumma v. Mumma,* 380 Pa.Super. 18, 550 A.2d 1341 (1988). Discerning the child's best interest is sometimes difficult, particularly in cases such as this one where both parents love their son and are quite capable of appropriately caring for him. In the instant case, the only appreciable difference cited between mother and father was father tends to be inflexible regarding their custody arrangement, i.e. he wants to stick to the custody Order and is not responsive to suggested unscheduled visitations by mother. This is not sufficient reason, however, to remove Nicholas from his father's home and place him with his mother who is moving to Florida to finish her degree. We fail to see how this is in Nicholas's best interest.

■ Mother claims the court relied on 23 Pa.C.S. § 5303, *supra,* in awarding her primary custody which was proper. The language of the statute itself is limiting, however, in that it states it is only one factor, *among others,* to be considered. There are many factors to consider in custody matters and it is error for a court to make its decision on this one factor. While mother's argument focuses on Dr. Schneider's testimony that she is the parent most likely to foster and encourage Nicholas's relationship with the non-

custodial parent and maternal grandparents, it is ironic that she is the one who wants to move Nicholas to Florida away from his father and maternal grandparents in Pennsylvania.

In *Davidyan v. Davidyan*, 229 Pa.Super. 495, 327 A.2d 139 (1974), we quoted the Supreme Court, saying "If all other factors are approximately equal, the Court should prefer a resident to a non-resident guardian and custodian, since the former is more amenable to the Court's continuous watchful eye, supervision and control." *Id.*, 229 Pa.Superior Ct. at 500, 327 A.2d at 141 (quoting *Shoemaker Appeal*, 396 Pa. 378, 382, 152 A.2d 666, 669 (1959)). In the instant case, the court did not have to balance its decision on the fact that mother is leaving the Commonwealth because "all other factors" were not equal—father has been the primary caretaker and there was no evidence introduced to show he should not continue in that role.

Order of June 2, 1989 is vacated; Order of February 10, 1989 is reinstated.

Jurisdiction relinquished.