582 A.2d 684

George J. BELAN, III, Appellant,

v.

Sylvia Mae BELAN, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 21, 1990.

Filed Nov. 19, 1990.

Ernest P. DeHass, Uniontown, for appellant.

Harry J. Cancelmi, Jr., Waynesburg, for appellee.

Before POPOVICH, JOHNSON and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Greene County temporarily transferring physical custody of a five year old child from her mother to her father pursuant to the terms of a separation agreement entered into by the parties. For the reasons set forth in this Opinion, we affirm the decision of the trial court.

The instant case involves a custody dispute over Tiffany Marie Belan, the parties' five-year-old child. Specifically at issue is whether the trial court correctly interpreted one of the provisions of the parties' separation agreement, dated December 5, 1987 and incorporated into the final decree of divorce. The paragraph in dispute is 9(f); however, for the sake of context and clarity we will reproduce the provision in its entirety, as it fully addresses the parties' agreement regarding custody and visitation. Paragraph nine reads:

9. *Custody and Visitation of Minor Child.*

(a) Husband and Wife hereby agree to share physical and legal custody of the child as more particularly described herein.

(b) As the parties contemplate that Wife will be leaving Pennsylvania and will be going to live in Illinois within 7 days of the date of this agreement, the parties make this agreement recognizing that Wife will be residing in Illinois and Husband will be residing in Pennsylvania. The child will remain with Husband until December 29, 1987, when Husband will take the child to Wife in Illinois along with some of her personal items. Thereafter, the child will remain with Wife for the months of January and February, 1988, with Husband during the months of March and April, 1988, and the parties shall alternate two month periods thereafter. This alternative visitation schedule shall continue until the child begins school; provided, however, that if the parties mutually agree that such alternate visitation periods are not in the best interest of the child, they will adjust

such visitation accordingly. In such event, the parties presently contemplate that the child would spend more time with Wife than with Husband, but the time spent with Husband would not be less than five months in any calendar year and would not be less than one month at a time. During said period, prior to the child's starting school, the child's birthday, Thanksgiving and Christmas will be alternated between the parties.

(c) When the child begins school, the parties presently contemplate that she will reside with Wife and that Husband will have partial custody of the child during her vacations from school during the Easter and Christmas vacations and during the entire summer vacation.

(d) At any time that the child is with one party, the other party will have the right of reasonable visitation within the state that other party is located with prior notice and subject to the convenience of the parties and the child.

(e) While the child is in Illinois, Husband will assume the responsibility of transportation to and from Illinois for visits, and will honor the schedule described herein except in the case of an emergency or inclement weather.

(f) In the event that the child is residing with Wife and Wife cannot provide a home environment which is in the best interest of the child, then the visitation schedule described herein will be reversed and Husband would have the responsibility to pick up the child in Pennsylvania and bring the child back to Pennsylvania to enjoy her visitation.

(g) Each, at all times, except in an emergency, shall be consulted by the other with respect to the health, education, religious training and general welfare of said child.

(h) It is expressly understood by both parties that neither shall do anything directly or indirectly to alienate the child's affection for the other or color the child's

attitude toward the other. The parents agree to consult and cooperate, and shall consult and cooperate with respect to the child so as, in a maximum degree, to advance her health, emotional and physical well-being and to give and afford her the affection of both parents and a sense of security. Both parties shall conduct themselves in a manner that shall be best for the interest, welfare and happiness of the child, and neither party shall do anything that shall affect the morals, health and welfare of the child to her detriment. The parents shall endeavor to guide the child so as to promote the affectionate relationship between the child and her father, and the child and her mother.

Separation Agreement, December 5, 1987.

In April, 1989, Mr. Belan filed a petition to modify the custody arrangement. He based his action upon learning that his ex-wife (formerly "Mrs. Belan"; hereinafter "Mrs. Husted") had changed her residence several times in less than two years and feeling that she was not providing a proper home environment for Tiffany commensurate with their agreement. *See* Appellant's brief, at 4.

Following a hearing, the trial court found that Tiffany's best interests were not being served.[1] Consequently, in accordance with paragraph 9(f) of the parties' separation agreement, the trial court *temporarily* modified the custody arrangements, awarding primary physical custody to Mr.

---

1. The trial court held:

   The basis of the modification Order was the factual determination that the mother was living in the family room in the basement of a home of a family member, wherein the mother, her paramour, and Tiffany were sleeping. Paragraph 9(f) of the September [sic] 5, 1987 agreement provides that the custody and visitation schedule in the agreement would be reverse [sic] in the event the mother "cannot provide a home environment which is in the best interest of the child". It is a matter of fact that it is not in the best interest of a five year old child to spend her nights in the family room situate [sic] in the basement of an aunt and uncle, sleeping on a love seat while the mother and her paramour sleep on the sofa in the same room. For that reason, the Court temporarily invoked the provisions of paragraph 9(f) of the separation agreement dated December 5, 1987.

   Trial Court memorandum, at 1–2.

Belan. It is the insertion of the word "temporarily" that has caused dissension.[2]

Both parties appealed the trial court's determination. Mrs. Husted discontinued her appeal. Thereafter, she filed a petition to modify the trial court's instant order.

Our function is to determine whether the trial court abused its discretion. Our standard of review is always the same: what is the best interest of the child? In *Mumma v. Mumma,* 380 Pa.Super. 18, 550 A.2d 1341 (1988), this Court aptly stated:

> In an appeal of a child custody determination made by a trial court, the paramount concern must be the best interest of the child. In reviewing a custody order, we are not bound by findings of fact made by the trial court which are unsupported in the record, nor are we bound by the trial court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where we find that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, we will not interfere with its order awarding custody.

*Id.,* 380 Pa.Superior Ct. at 21, 550 A.2d at 1343 (citations omitted); *see also Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984).

In the instant case, Mr. Belan contends that the trial court erred in treating the change in custody as only temporary in nature. He argues that the separation agree-

---

2. The trial court order reads
   AND NOW, this 27th day of October, 1989, the Court confirms the contract between the parties dated December 5, 1987 and the amendment thereto dated August 16, 1988 and will deem this proceeding to be litigation over the provisions of paragraph 9(f) in the Agreement and, therefore, ORDERS the alternative provisions set forth in the Agreement temporarily be in force and effect.

ment contemplated a determination as to which parent would be afforded primary physical custody of Tiffany when she began school. The agreement allowed the mother custody *unless* she was unable to provide a suitable environment for Tiffany, in which case custody would switch to the father. Mr. Belan stresses that neither party intended either arrangement to be temporary. *See* Appellant's brief, at 8.

Conversely, Mrs. Husted argues that the trial court's order was proper and was entered as a result of her transient living situation. She states:

Appellee respectfully suggests that the record clearly reveals that the only fact that the court considered in altering the arrangements that were in place under the shared custody agreement was the temporary re-location of the mother in terms of her physical residence. Otherwise, all concerns and facts being equal, the court would not have changed the custody arrangement as of October, 1989.

Appellee's brief, at 11–12.

While we appreciate that the parties are confused about the trial court's word choice in its order, we nevertheless feel that the issue is one of semantics. Mr. Belan, in particular, strongly contests the use of the word "temporarily." He posits that the word implies "that if [Mrs. Husted] merely moved to a home more suitable than the one in which she was living at the time of the hearing, the separation agreement provided that the custodial arrangement would automatically be reversed again." Appellant's brief, at 9. He argues further:

Despite the fact that the separation agreement does not contemplate another change in that arrangement if Mother subsequently bettered her home environment, the lower court deemed the switch in the arrangement to be temporary because of the requirements of the separation agreement.... Even though there was no such provision in the separation agreement, the lower court implied that

the new arrangement would automatically end when the Mother obtained adequate housing.

Appellant's brief, at 11.

Mr. Belan's argument is, at first glance, persuasive of the possibility that the trial court contemplated an automatic change in the custody arrangement contingent upon Mrs. Husted's re-location to more suitable living conditions for Tiffany. However, as this Court recently stated in *Artzt v. Artzt*, 383 Pa.Super. 23, 556 A.2d 409 (1989), "[i]t is axiomatic that child custody orders are temporary in nature and subject to change if new circumstances affect the welfare of the child." *Id.*, 383 Pa.Superior Ct. at 28, 556 A.2d at 412; *see also Parker v. MacDonald*, 344 Pa.Super. 552, 558, 496 A.2d 1244, 1247 (1985) ("custody orders are unique and never final").

Of equal importance, the law in this area indicates that a trial court may not (automatically) revise a custody order until it fully considers the *totality* of the circumstances and discerns the *best interest* of the child at present.[3] *See Moore v. Moore*, 393 Pa.Super. 256, 574 A.2d 105 (1990); *Martin v. Martin*, 386 Pa.Super. 328, 332, 562 A.2d 1389, 1391 (1989) (court hearing petition for modification of custody order must consider best interests of child); *Murphey v. Hatala*, 350 Pa.Super. 433, 438–39, 504 A.2d 917, 920 (1986).[4] In the instant case, irrespective of whether the

---

**3.** Mrs. Husted has filed a petition to modify the trial court's order, alleging that she has remarried and has moved into a two story, four bedroom home suitable to Tiffany's present needs. However, these facts are not part of the instant appeal. Therefore, neither this Court nor the trial court may consider them until such time as this appeal is resolved.

Rather, the record indicates that the trial court's order was entered on October 27, 1989. Notice of appeal was filed on November 27, 1989. Mrs. Husted's petition to modify or to reconsider the child custody order was filed on December 22, 1989, almost two months after the trial court initially entered the order that is the subject of this appeal. Thus, the trial court is precluded from modifying or rescinding its order at this time. *See* 42 Pa.C.S. § 5505; Pa.R.A.P. 1701(b)(3). Mrs. Husted may present her petition to the trial court after the disposition of this appeal. *See Bartle v. Bartle*, 304 Pa.Super. 348, 450 A.2d 715 (1982).

**4.** We note that in this case, the trial court stated, "[o]nly by both parents deciding to enroll the child in preschool, for all intents and

trial court used "ambiguous terminology" in its order, Mr. Belan maintains primary physical custody of Tiffany and will continue to do so unless and until the trial court determines otherwise.

In *Mumma v. Mumma*, 380 Pa.Super. 18, 550 A.2d 1341 (1988), this Court stated:

> The trial court was not bound by the parties' agreement with respect to Bo's custody. A contract pertaining to the custody of a minor child is always subject to being set aside in the best interest of the child. [Citations omitted]. To set aside a private agreement regarding the custody of a child, it is not necessary that a court find a change of circumstances. Such an agreement, although entitled to be considered, must always give way where the best interests of the child suggest an alternate custody arrangement.

*Id.*, 380 Pa.Superior Ct. at 22, 550 A.2d at 1343; *Dolan v. Dolan*, 378 Pa.Super. 321, 548 A.2d 632 (1988) (when structuring a custody order, court may modify a marriage settlement agreement to protect the best interest of the child); *Hattoum v. Hattoum*, 295 Pa.Super. 169, 178, 441 A.2d 403, 407 (1982) (the child's best interest determines custody, not the parental agreement). *See also Chapman v. Goodman*, 366 Pa.Super. 130, 530 A.2d 926 (1987) ("[t]he cardinal concern in all custody proceedings is the best interest and permanent welfare of the child."); *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 323, 421 A.2d 157, 158 (1980) (accord).

Here, the trial court may reinstate the original custody arrangement *if*, after full consideration of Mrs. Husted's petition, it determines that Tiffany's best interests will be served with her mother.[5] *See Karis v. Karis*, 518 Pa. 601,

purposes, I think the Court is in a position of accepting the fact that the school life of Tiffany Belan has now started." N.T., October 27, 1989, at 258. Tiffany began kindergarten while residing with her father. Next year, she will enter the first grade. The trial court should consider this issue, among other factors, if and when it engages in a reevaluation of Tiffany's best interest.

5. Again, we note that the trial court may only entertain Mrs. Husted's petition for modification upon resolution of the instant appeal. We base our decision upon a finding that under the facts and circum-

544 A.2d 1328 (1988) (a party seeking modification of a custody order is not required to demonstrate substantial change in circumstances before the court will entertain the petition); *Hutchinson v. Hutchinson,* 379 Pa.Super. 247, 251, 549 A.2d 999, 1001 (1988) (court will consider petitions for custody modification even absent a showing of changed circumstances because the concept of "changed circumstances" is "incorporated into the review of best interest instead of being a prerequisite for undertaking that review"); *Jaindl v. Myers,* 520 Pa. 147, 553 A.2d 407 (1989), Per Curiam; Dissenting Opinion by Nix, C.J. (extends *Karis* to petitions for modifications of primary custody orders); *Martin v. Martin,* 386 Pa.Super. 328, 332, 562 A.2d 1389, 1391 (1989) (states that *"Jaindl* is a directive that petitions for modification of custody orders may be filed at any time, and in all such cases the court hearing the petition must consider the best interests of the child or children").

Here, the trial court clearly stated that it was limiting its order to an invocation of provision 9(f) of the parties' separation agreement. N.T., October 27, 1989, at 258–59. *See also id.* at 138–39.[6] It did not engage in a determination of whether Mr. Belan was a better parent than Mrs. Husted; conversely, the issue of parental fitness was not even raised during the proceedings. The trial court simply held that Tiffany's best interest would be served if she lived with Mr. Belan at the time of the hearing. N.T., October 27, 1989, at 258–59. If the trial court deems that custody should revert back to Mrs. Husted after a decision on her petition, then the trial court should set forth its findings and enter an Order accordingly. On the other hand, if the trial court finds that Tiffany's best interest will be served if she remains in the primary physical custody of her father, then the "temporary" order will be accorded a more lasting

stances of this case, the trial court presently has lost jurisdiction to entertain additional claims pertaining to this appeal. 42 Pa.C.S. § 5505; Pa.R.A.P. 1701(b)(3).

**6.** The trial court stressed that when the parties executed the separation agreement, they entered into a contract. The trial court held that "the parties are to live and abide by that contract." N.T., October 27, 1989, at 258; *see id.* at 257–59.

effect. *See Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 108–09, 296 A.2d 625, 627 (1972) (paramount interest in a custody dispute is the child's "physical, intellectual, spiritual and emotional well-being" and all other interests are subordinate); *Davidyan v. Davidyan,* 230 Pa.Super. 599, 327 A.2d 145 (1974) (child's welfare is primary factor to consider in awarding custody).

We find no abuse of discretion with the trial court's order as it now stands. Therefore, we affirm. *See Burke v. Pope,* 374 Pa.Super. 467, 543 A.2d 566 (1988) (temporary custody order was entered); *Chapman v. Goodman,* 366 Pa.Super. 130, 530 A.2d 926 (1987) (same).

Order affirmed.

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting:

I agree wholeheartedly with the majority that the trial court did not abuse its discretion in awarding temporary custody to George J. Belan, III, the party bringing this appeal. In my view, however, Belan (hereinafter "Father") is not an "aggrieved party." I must therefore question whether this appeal should properly be entertained, once Sylvia Mae Belan, (hereinafter "Mother"), the losing party in the trial court, has withdrawn her appeal. Moreover, I cannot agree with the dictum found in several footnotes of the majority opinion suggesting that the trial court may entertain a petition for modification of custody only after the disposition of a pending appeal. Accordingly, I respectfully dissent.

At the conclusion of a hearing held over two days (September 25, 1989 and October 27, 1989) the Honorable H. Terry Grimes, President Judge, reached the following finding of fact and entered the following order, on the record:

BY THE COURT: The question before the Court today is whether or not the wife, and that is how it was referred to in the agreement, Mrs. Belan, is able to provide a home

environment that's in the best interest of the child. Based upon the testimony and exhibits presented, the Court finds that a home environment in the best interest of Tiffany is not being provided at this time; therefore, the Court will make this temporary order:

AND NOW, this 27th day of October, 1989, the Court confirms the contract between the parties dated December 5, 1987 and the amendment thereto dated August 16, 1988 and will deem this proceeding to be litigation over the provisions of paragraph 9(f) in the Agreement and therefore, ORDERS the alternative provisions set forth in the Agreement temporarily be in force and effect.

Proceedings, 9/25/89 and 10/27/89, pages 258–59.

My colleagues in the majority acknowledge that Father is the winning party in the trial court, with primary physical custody of the child having been awarded to Father. Majority page 686. They do not explain why this appeal should be entertained.

Only an aggrieved party can appeal from an order entered by the trial court. Pa.R.A.P. 501. To be aggrieved, a party must have been adversely affected by the decision from which the appeal is to be taken. Generally, a prevailing party is not "aggrieved," and therefore, does not have standing to appeal an order which has been entered in her or his favor. *Green by Green v. SEPTA*, 380 Pa.Super. 268, 551 A.2d 578 (1988) (citing cases). When one issue in a case is decided against a party, but the party prevails on the other issues and wins the case in chief, the party cannot claim to have been adversely affected and hence "aggrieved" by the decision; he therefore lacks standing to appeal the single issue decided against him. *Burchanowski v. County of Lycoming*, 32 Pa.Commw. 207, 210, 378 A.2d 1025, 1027 (1977).

In this case, the order of October 27, 1989 removed primary physical custody during the school term from Mother and vested such custody in Father. The only complaint advanced by Father is that the order awarding him custody included the word "temporary." Father urges that

the use of that word by the trial court raises an implication as to future action by the trial court. Father cites no authority for the proposition that this court must review anything more than what a trial court, in fact, *orders*, as opposed to what any particular appellant believes might be *implied* by the trial court. I would reject this invitation to speculate upon possible future court conduct.

Where, as here, Father has been the prevailing party below and physical custody has been awarded to him, I would conclude that Father lacks any standing to appeal, not being an "aggrieved party" under Pa.R.A.P. 501. Therefore, I would dismiss the appeal. *Green by Green v. SEPTA, supra; Burchanowski v. County of Lycoming, supra.*

I must also dissent from so much of the opinion of the majority that suggests, by way of dictum, that a trial court is precluded from entertaining a petition for modification of a custody order while an appeal is pending. First, the issue is not before us. In footnote three the majority correctly states that Wife untimely filed a motion to modify/reconsider the order of October 27, 1989; she filed her motion on December 22, 1989. Of course, because her motion was not timely, the trial court could not and did not consider it. I would refrain from any assertions concerning what procedural rights might be available to the parties were they to seek to proceed in the trial court on issues concerning the best interests of the child, where there are no facts before us on this appeal to warrant such conjecture.

The majority goes further and suggests that, even had the motion been timely filed, the trial court could not consider it. The law is otherwise. Pa.R.A.P. 1701(b)(3), 42 Pa.C.S., specifically allows a court to entertain a motion for reconsideration after the appeal is lodged, *if timely filed.* The majority relies upon *Bartle v. Bartle,* 304 Pa.Super. 348, 450 A.2d 715 (1982), a custody case, for the proposition that Mother must wait until after the appeal is decided before she may present her petition. What *Bartle* actually holds is that "Although Pa.Rules Appellate Pro. 1701(b)(3)

sets forth an exception to the general rule [that the trial court loses jurisdiction once an appeal is taken], it also sets forth certain, specific procedural mandates with regard to such exceptions none of which were followed in this case." *Bartle*, 304 Pa.Super. at 351, 450 A.2d at 716.

I agree that Judge Grimes did not abuse his discretion in entering the trial court order awarding temporary physical custody in Father, who seeks to bring this appeal. However, I would dismiss the appeal as being brought by a party who is not aggrieved by Judge Grimes' order.

Accordingly, I dissent.